# UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

|  |  |
|---|---|
| Loma Linda – Inland Empire Consortium | ) |
| For Healthcare Education | ) |
| d/b/a | ) |
| Loma Linda University Health | ) |
| Education Consortium | ) |
| 11175 Campus Street | ) |
| Loma Linda, CA 92354 | ) |
|  | ) |
| Plaintiff/Appellant | ) |
|  | ) No. 23-5096 |
| v. | ) |
|  | ) |
| National Labor Relations Board | ) |
| 1015 Half Street, SE | ) |
| Washington, DC 20003 | ) |
|  | ) |
| Defendant/Appellee | ) |

## APPELLANT'S EMERGENCY MOTION FOR INJUNCTION PENDING APPEAL AND TO EXPEDITE APPEAL

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................1

BACKGROUND ...................................................................................................2

I.    LLUHEC Is a Seventh-day Adventist Educational Institution ......................2

II.   LLUHEC Residents and Fellows Are Both Teachers and Students ..............3

III.  Proceedings Before the Board ........................................................................3

IV.   Proceedings Before the District Court............................................................4

STANDARD OF REVIEW ...................................................................................5

I.    Subject Matter Jurisdiction.............................................................................5

II.   Injunction Pending Appeal .............................................................................5

ARGUMENT .........................................................................................................6

I.    The District Court Has Subject Matter Jurisdiction Pursuant to
      *Leedom*...............................................................................................................6

      A.    The NLRB's Exercise of Jurisdiction Over LLUHEC Violates
            the First Amendment ............................................................................7

            1.    *Catholic Bishop* Holds that the First Amendment
                  Prohibits the Board from Taking Jurisdiction Over Cases
                  Involving Persons With Teaching Responsibilities at
                  Religious Educational Institutions ..............................................7

            2.    *Great Falls* Reinforces *Catholic Bishop's* Holding That
                  the Board May Not Subject Religious Educational
                  Institutions to Its Jurisdiction and Adopted a Three-Prong
                  Test to Identify Such Institutions................................................8

            3.    *Great Falls* Applies Here Because the LLUHEC
                  Residents and Fellows Have Teaching Responsibilities .........10

94502040v.4

        4.    Under *Catholic Bishop,* the NLRB May Not Constitutionally Exercise Jurisdiction Over LLUHEC Because LLUHEC Satisfies the *Great Falls* Test. .................10

   B.    LLUHEC Has No Meaningful and Adequate Method of Vindicating Its Rights Other Than Immediate Intervention by This Court ....................................................................................11

        1.    The Supreme Court in *Axon Enterprises, Inc. v. FTC* Determined Appellate Review Schemes Like the NLRA's Do Not Provide Meaningful Judicial Review When a Party Is Attacking the Legitimacy of the Administrative Proceeding Itself .................................12

        2.    LLUHEC Has No Meaningful and Adequate Method of Vindicating Its Rights Under the NLRA's Appellate Review Process ........................................................14

        3.    The Cases Relied On by the District Court to Support Its Conclusion that LLUHEC Has Meaningful Judicial Review Under the NLRA Are Distinguishable or Have Been Superseded ....................................................17

II.    LLUHEC Satisfies Each Factor Considered by This Court for the Issuance of an Injunction Pending Appeal. ..................................20

   A.    LLUHEC Is Likely to Succeed on the Merits ....................................21

   B.    LLUHEC Is Suffering Irreparable Harm and Will Continue to Do So Absent This Court's Intervention.............................................21

   C.    The Public's and LLUHEC's Interest in First Amendment Rights Are Greater Than the Public Interests Embodied in the NLRA ....................................................................................22

III.   This Appeal Should Be Expedited ................................................22

CONCLUSION ....................................................................................23

ii

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Am. Fed. of Gov't Emps., Local 2510 v. FLRA*,
    453 F.3d 500 (D.C. Cir. 2006)..............................................................................5

*American Federation of Labor v. NLRB*,
    308 U.S. 401 (1940)..................................................................................6, 19

*Axon Enterprises, Inc. v. FTC*,
    __ U.S. __, 2023 WL 2938328 (2023) ................ 2, 11, 12, 13, 14, 15, 16, 18, 19

*Bethany College*,
    369 NLRB No. 98 (2020) ..................................................................9, 18, 21, 22

*Carroll College, Inc. v. NLRB*,
    558 F.3d 568 (D.C. Cir. 2009)..........................................................................1, 8

*Christian Legal Society v. Walker*,
    453 F.3d 853 (7th Cir. 2006) ..............................................................................22

*Cox v. McCulloch*,
    315 F.2d 48 (D.C. Cir. 1963).........................................................................17, 18

*Defense Distributed v. US Department of State*,
    865 F.3d 211 (5th Cir. 2017) ..............................................................................22

*Duquesne University of the Holy Spirit v. NLRB*,
    947 F.3d 824 (D.C. Cir. 2020).................................................................1, 8, 9, 10

*GSS Grp. Ltd. v. Nat'l Port Auth. of Liberia*,
    822 F.3d 598 (D.C. Cir. 2016)..............................................................................5

*Hartz Mountain Corp. v. Dotson*,
    727 F.2d 1308 (D.C. Cir. 1984)............................................................................6

*Heartland Plymouth Court MI, LLC v. NLRB*,
    838 F.3d 16 (D.C. Cir. 2016) ...............................................................................9

*Karem v. Trump*,
    960 F.3d 656 (D.C. Cir. 2020)........................................................................5, 20

*Lawrence Typographical Union v. McCulloch*,
　　349 F.2d 704 (D.C. Cir. 1965)..................................................................7

*Leedom v. Kyne*,
　　358 U.S. 184 (1958)....................................... 4, 6, 7, 14, 15, 17, 18, 19

*McCulloch v. Libbey-Owens-Ford Glass Co.*,
　　403 F.2d 916 (D.C. Cir. 1968)..................................................................7

*Mills v. District of Columbia*,
　　571 F.3d 1304 (D.C. Cir. 2009)..................................................................5, 20

*Nat'l Air Traffic Controllers Ass'n v. Fed. Serv. Impasses Panel*,
　　437 F.3d 1256 (D.C. Cir. 2006).............................................................7, 14

*NLRB v. Catholic Bishop of Chicago*,
　　440 U.S. 490 (1979).................................................................7, 8, 10, 11, 15, 16

*NLRB v. Interstate Dress Carriers, Inc.*,
　　610 F.2d 99 (3d. Cir. 1979) ..................................................................18

*Pursuing America's Greatness v. Federal Election Comm'n*,
　　831 F.3d 500 (D.C. Cir. 2016)..................................................................21, 22

*Roman Catholic Diocese of Brooklyn v. Cuomo*,
　　__ U.S. __, 141 S. Ct. 63 (2020)..................................................................21

*Securities and Exchange Commission et al. v. Cochran* ..................................12, 15

*Thunder Basin Coal Co. v. Reich*,
　　510 U.S. 200 (1994)..................................................................12, 13, 14

*Universidad Central de Bayamon v. NLRB*,
　　793 F.2d 383 (1st Cir. 1984)..................................................................9

*University of Great Falls v. NLRB*,
　　278 F.3d 1335 (D.C. Cir. 2002)................................. 1, 3, 8, 9, 10, 11, 15, 18, 21

**Statutes**

15 U.S.C. §45(c) ..................................................................13, 16

15 U.S.C. §78y(a)(1) and (3) ..................................................................13, 16

28 U.S.C. § 1331 ..................................................................................18

29 U.S.C. §  151, *et seq.*..........................................................................2

29 U.S.C. § 2(5)  ..................................................................................17

29 U.S.C. § 10(e)  ...........................................................................12, 16

California Nonprofit Religious Corporation Law....................................11

D.C. Circuit Handbook § VIII.B at 34...................................................23

Federal Trade Commission Act ...........................................13, 14, 15, 16

National Labor Relations Act ...................... 2, 4, 6, 7, 12, 14, 15, 16, 17, 19, 21, 22

Securities Exchange Act .......................................................13, 14, 15, 16

**Other Authorities**

16 C.F.R. §§ 3.21-3.56...................................................................13, 16

16 C.F.R. §§ 3.52-3.54...................................................................13, 16

17 C.F.R. 201.221-201.360...................................................................16

17 C.F.R. 201.410-201.411(a) ..............................................................16

17 C.F.R. §§ 2.0.410-201.411(a) ..........................................................13

17 C.F.R. §§ 201.221-201.360..............................................................13

29 C.F.R. §§ 120.35, 102.45 ................................................................16

29 C.F.R. § 153(a)................................................................................16

First Amendment to the U.S. Constitution .................... 1, 3, 7, 8, 17, 18, 19, 21, 22

D.C. Cir. R. 8(a)(1) ........................................................................5, 20

D.C. Cir. Rule 47.2 ..............................................................................23

www.lluh.org/aboutus; https://lluh.org/health-professionals/gme;
     https://lluh.org/health-professionals/gme/prospective-residents ........................11

**INTRODUCTION**

Appellant Loma Linda – Inland Empire Consortium for Healthcare

Education d/b/a Loma Linda University Health Education Consortium

("LLUHEC") hereby requests that, pending appeal, this Court enjoin the National

Labor Relations Board ("NLRB" or "Board") from further processing Board case

numbers 31-RC-312064, 31-CA-312728 and 31-CA-316434, except to effectuate

their immediate dismissal. LLUHEC also requests this Court expedite LLUHEC's

appeal and adopt the proposed briefing scheduling contained herein. Counsel for

LLUHEC has notified the Board of the filing of this motion. The parties were

unable to agree to a briefing schedule or date for the NLRB's response.

The requested relief is necessary because LLUHEC is a religious

educational institution and the NLRB continues to encroach on the First

Amendment rights of such institutions despite this Court's decisions in *University

of Great Falls v. NLRB* ("*Great Falls*")*, Carroll College, Inc. v. NLRB,* and

*Duquesne University of the Holy Spirit v. NLRB, infra*, all holding such conduct is

constitutionally prohibited.

Not only has the Board already infringed on LLUHEC's constitutional rights

by holding a hearing that went far beyond the three-part test this Court established

in *Great Falls*, at the behest of the union involved in the proceedings, the Board

currently is in the process of evaluating and determining the *bona fides* of LLUHEC's religious faith and practices.

The requested injunction is necessary as the Board proceedings are causing LLUHEC irreparable harm that cannot, pursuant to *Axon Enterprises, Inc. v. Federal Trade Commission,* be remedied by appellate review provided by the National Labor Relations Act ("NLRA"). 29 USC ¶ 151, *et seq*.

## BACKGROUND

### I.    LLUHEC Is a Seventh-day Adventist Educational Institution

LLUHEC is a non-profit religious corporation integrated into Loma Linda University Health, and part of the Seventh-day Adventist Church ("Church"). Docs. 6-2 ¶¶ 4-5; 6-3; 6-4. It was granted 501(c) status by the Internal Revenue Service. Doc: 6-4. LLUHEC holds itself out as a Seventh-day Adventist institution on numerous publicly-available websites. Docs: 6-2 ¶12; 6-7; 6-8; 6-10; 6-11; 6-13. Further, LLUHEC's Christian affiliation is apparent from the prominent display of Christian symbols on LLUH's website and the LLUH campus. Doc: 6-2 ¶ 13.

LLUHEC operates approximately 70 residency programs for the purpose of educating fellows and residents in a manner consistent with the teaching and healing ministries of Jesus Christ and the Church. Docs: 6-2 ¶ 6; 6-15 ¶ 12.

LLUHEC is exclusively an educational institution;[1] it does not treat patients, and is not a hospital or clinic. Doc: 6-2 ¶ 10. It owns no medical equipment or medical facilities. Doc: 20-9 ¶ 16.

## II.    LLUHEC Residents and Fellows Are Both Teachers and Students

Per stipulation in the NLRB proceeding, "[a]s required by ACGME and LLUHEC, all LLUHEC residency and fellowship programs require residents and fellows to engage in teaching of medical students, other residents, and other medical professionals." Doc: 20-9 ¶ 4. See also Docs: 6-2 ¶ 14; 6-8 p. 2; 6-13 ¶ 11(c).

## III.    Proceedings Before the Board

On February 13, 2023,[2] the Union filed a petition with NLRB Region 31 seeking to represent "[a]ll residents and fellows employed" at LLUHEC.[3] Doc: 6-9, pp. 1-2. LLUHEC promptly moved Region 31 – and then the NLRB itself – to bifurcate the issue of whether the Board had jurisdiction over LLUHEC, so as to avoid the First Amendment trolling that necessarily would arise during an

---

[1] LLUHEC's residency and fellows programs are approved by the Accreditation Council for Graduate Medical Education ("ACGME"). Doc. 6-2 at ¶ 10; Doc. 6-6.

[2] All dates hereafter are in 2023.

[3] See Add. pp. 14-16 for unfair labor practice charges 31-CA-212728 and 31-CA-316434.

94502040v.4

administrative proceeding. *Id*., pp. 24-34; 45-55. Region 31 and the NLRB denied LLUHEC's requests.[4] *Id.*

## IV.    Proceedings Before the District Court

After the Board refused to decline jurisdiction, on March 14, LLUHEC filed a complaint with the District Court seeking a judgment declaring the NLRB lacked jurisdiction and ordering the NLRB to immediately dismiss the administrative matters before it. Doc: 1 ¶¶ 5, 17-34.

On March 21, LLUHEC filed a motion for a preliminary injunction asking the District Court to enjoin the Board from further processing the administrative matters before it, except as necessary to effectuate their dismissal. Doc: 6.

On April 11, the District Court issued an order dismissing LLUHEC's complaint for lack of subject matter jurisdiction. Doc: 24. In its accompanying opinion, the District Court acknowledged the "NLRB has consistently run afoul"

---

[4] Because the NLRB refused to bifurcate the jurisdictional issue, LLUHEC was required to participate in a representation hearing at which evidence beyond that necessary to determine if LLUHEC met the three-pronged *Great Falls/Bethany College* test, *infra*. was admitted. Moreover, contrary to the First Amendment protections established by that test, in its post-hearing brief the Union urges the NLRB to scrutinize how the Seventh-day Adventist faith affects LLUHEC's ranking of possible residents and fellows, patient care, and hiring practices; whether LLUHEC requires its residents and fellows to be members of the Seventh-day Adventist Church and participate in religious activities; and to what extent LLUHEC incorporates elements of the Seventh-day Adventist doctrine into its residency and fellow programs. Add. p. 9-13.

of this Court's precedent that the "NLRB has no jurisdiction over non-profit institutions that are religiously affiliated." Doc: 25, p. 4.

The District Court concluded, however, the NLRA appellate review process offers LLUHEC a meaningful opportunity for judicial review. *Id.*, p. 5. Accordingly, the District Court held the ability to obtain judicial protection against *ultra vires* non-final Board action as set forth in *Leedom v. Kyne*, 358 U.S. 184 (1958), does not apply "[b]ecause appellate review is available to [LLUHEC] after the NLRB's ultimate decision." *Id.,* p. 6.

## STANDARD OF REVIEW

### I.    Subject Matter Jurisdiction

A district court has subject matter jurisdiction pursuant to *Leedom*, *supra*, when: (1) "the agency's alleged conduct [is] contrary to a specific statutory prohibition that is both clear and mandatory;" and (2) "the party aggrieved must have no other meaningful and adequate mean[s] of vindicating its statutory rights." *Am. Fed. of Gov't Emps., Local 2510 v. FLRA,* 453 F.3d 500, 506 (D.C. Cir. 2006) (cleaned up). This Court applies a *de novo* standard of review for a District Court's dismissal for lack of subject matter jurisdiction. *See GSS Grp. Ltd. v. Nat'l Port Auth. of Liberia*, 822 F.3d 598, 604 (D.C. Cir. 2016).

### II.    Injunction Pending Appeal

A party seeking an injunction pending appeal must demonstrate: (1) a substantial likelihood of success on the merits; (2) it would suffer irreparable

injury if the injunction were not granted; (3) an injunction would not substantially

injure other interested parties; and (4) the public interest would be furthered by the

injunction. D.C. Cir. R. 8(a)(1). *See Mills v. District of Columbia*, 571 F.3d 1304,

1308 (D.C. Cir. 2009). The third and fourth factors merge where the government is

the opposing party. *See Karem v. Trump,* 960 F.3d 656, 668 (D.C. Cir. 2020).

**ARGUMENT**

**I.     The District Court Has Subject Matter Jurisdiction Pursuant to *Leedom***

Federal courts generally lack jurisdiction to review NLRB actions arising

during representation proceedings under the NLRA. *See Hartz Mountain Corp. v.*

*Dotson,* 727 F.2d 1308, 1310 (D.C. Cir. 1984); *see also* Doc. 18 at pp. 1-4 for a

summary description of procedure under the NLRA. This principle arises from the

Supreme Court's determination in *American Federation of Labor v. NLRB* that

NLRB action taken during representation proceedings does not constitute a "final

order" of the Board. 308 U.S. 401, 410-411 (1940). The Court, however,

specifically recognized its decision did not address the question of "whether

petitioners are precluded by the provisions of the Wagner Act from maintaining an

independent suit in a district court." *Id.* at 404-405.

*Leedom* "squarely present[ed]" to the Court "the question found not to have

been presented by the record in *American Federation of Labor v. Labor Board*."

358 U.S. at 188. The Court held, "the answer surely must be yes." *Id.* The Court

6

noted the "suit [was] not one to 'review,' . . . a decision of the Board made within its jurisdiction. Rather it [was] one to strike down an order of the Board made in excess of its delegated powers." *Id.*

To come within the *Leedom* exception to finality, a party must show: (1) the Board has acted in excess of its delegated powers; and (2) excepting district court review of the Board's action, the plaintiff would be deprived of a meaningful and adequate method of vindicating its rights. *Nat'l Air Traffic Controllers Ass'n v. Fed. Serv. Impasses Panel,* 437 F.3d 1256, 1263 (D.C. Cir. 2006).

This Court has recognized that the *Leedom* exception applies to strong and clear allegations that the Board has violated a party's constitutional rights. *See McCulloch v. Libbey-Owens-Ford Glass Co.,* 403 F.2d 916, 917 (D.C. Cir. 1968); *Lawrence Typographical Union v. McCulloch,* 349 F.2d 704, 708 (D.C. Cir. 1965).

### A. The NLRB's Exercise of Jurisdiction Over LLUHEC Violates the First Amendment

1. <u>*Catholic Bishop* Holds that the First Amendment Prohibits the Board from Taking Jurisdiction Over Cases Involving Persons With Teaching Responsibilities at Religious Educational Institutions</u>

In *NLRB v. Catholic Bishop of Chicago*, the Supreme Court held the NLRA does not grant the Board jurisdiction over cases involving persons with teaching responsibilities at religious educational institutions. 440 U.S. 490, 507 (1979). The Court detailed how the religious elements of education are inseparable from and

7

inextricably intertwined with the secular components, and how any effort by the Board to differentiate between the two risks constitutionally impermissible government entanglement in the school's religious mission. *Id*. at 501-502.

Regarding the constitutional harms arising from an exercise of jurisdiction, the Court stated, "[i]t is not only the conclusions that may be reached by the Board which may impinge on rights guaranteed by the Religion Clauses, *but also the very process of inquiry leading to findings and conclusions." Id.* at 502 (emphasis added).

　　　　　　2.　　*Great Falls* Reinforces *Catholic Bishop's* Holding That the Board May Not Subject Religious Educational Institutions to Its Jurisdiction and Adopted a Three-Prong Test to Identify Such Institutions

Reinforcing *Catholic Bishop*, this Court in *Great Falls* established a "bright line" three-prong test to prevent the Board from "delving into matters of religious doctrine or motive" and "coercing an educational institution into altering its religious mission to meet regulatory demands." 278 F.3d 1335, 1345, 1347 (D.C. Cir. 2002). The three prongs are whether an institution: (1) holds itself out to the public as a religious institution; (2) is non-profit; and (3) is religiously affiliated. *Id.* at 1347. If this showing is made, the Board lacks jurisdiction and cannot further process the case without violating the First Amendment Religion Clauses. *Id.*

Following its *Great Falls* decision, this Court applied the three-prong test in two cases involving the NLRB's effort to assert jurisdiction over other religious

8

educational institutions. *See Carroll College, Inc. v. NLRB*, 558 F.3d 568 (D.C. Cir. 2009), and *Duquesne University of the Holy Spirit v. NLRB*, 947 F.3d 824 (D.C. Cir. 2020).[5] In those cases as well, this Court admonished the Board for failing to follow this Court's "bright line" *Great Falls* jurisdictional test. *See, e.g., Duquesne University*, 947 F.3d at 831.[6]

Indeed, it is apparent the NLRB's General Counsel ("GC") is refusing to acquiesce to this Court's admonitions regarding the Board's lack of jurisdiction over religious educational institutions. In *Saint Leo's University, Inc.*, JD-23-14, the GC recently filed exceptions to an Administrative Law Judge's ("ALJ") decision dismissing on jurisdictional grounds a case involving a Catholic university. The GC is urging the Board to overturn its current jurisdictional test in *Bethany College*, 369 NLRB No. 98 (2020) which is derived from *Great Falls*, and return to a test this Court specifically found "cannot be squared with our precedent" and "impermissibly intrudes into religious matters." *Duquesne University*, 947 F.3d at 833-834. *See* Docs: 20-2 p. 2; 20-3 pp. 3, 67-74.

---

[5] *See also Universidad Central de Bayamon v. NLRB*, 793 F.2d 383 (1st Cir. 1984)(evenly divided *en banc*)(finding NLRB had no jurisdiction over teachers at religiously affiliated university).

[6] As this Court reproached the Board in *Heartland Plymouth Court MI, LLC v. NLRB*, 838 F.3d 16, 18 (D.C. Cir. 2016), "the Board's longstanding 'nonacquiescence' towards the law of any circuit diverging from the Board's preferred national labor policy takes obduracy to a new level."

9

3.     *Great Falls* Applies Here Because the LLUHEC Residents and Fellows Have Teaching Responsibilities

This Court in *Duquesne University* made clear that *Great Falls* is not limited to particular categories of teachers. Instead, this Court underscored, "once we determine that [the persons seeking to unionize] are faculty members *or teachers of any sort,* the *Great Falls* test applies." 947 F.3d 824, 832-833 (emphasis added). Further, *Duquesne University* rejected the argument that adjuncts were not similar to faculty for the simple fact that "[a]djuncts teach." *Id.* at 836.

Here, it is stipulated and undisputed the LLUHEC residents and fellows have teaching responsibilities. Doc. 20-9 at ¶ 4. See also Docs: 6-2 ¶ 14; 6-8 p. 2; 6-13 ¶ 11(c). As such, the *Great Falls* test applies; and, as shown below, LLUHEC satisfies this test.

4.     Under *Catholic Bishop,* the NLRB May Not Constitutionally Exercise Jurisdiction Over LLUHEC Because LLUHEC Satisfies the *Great Falls* Test.

LLUHEC satisfies the *Great Falls* three-pronged test and is a religious education institution exempt from Board jurisdiction because it: (i) holds itself out to the public as a religious institution; (ii) is non-profit; and (iii) is part of the Seventh-day Adventist Church.

LLUHEC holds itself out to the public as a religious institution in multiple ways. The public-facing website discusses its religiously-inspired mission and identifies LLUHEC as a Church institution on numerous pages. Doc: 6-2 ¶12; 6-7;

10

*see also* www.lluh.org/aboutus; https://lluh.org/health-professionals/gme;

https://lluh.org/health-professionals/gme/prospective-residents. Many publicly-

available materials also clearly identify LLUHEC as a religious institution. Docs:

6-8; 6-10; 6-11. Additionally, the LLUH campus features many prominent

representations of the Seventh-day Adventist faith. Doc: 6-2 ¶ 13.

      LLUHEC meets the second prong because it is organized under the

California Nonprofit Religious Corporation Law and was granted 501(c) status by

the IRS. Docs: 6-3; 6-4.

      LLUHEC satisfies the last prong of the *Great Falls* test because it not only

is affiliated with a religious organization, it is an actual part of the Church. Docs:

6-2; 6-3; 6-7; 6-10; 6-11; 6-13.

### B.    LLUHEC Has No Meaningful and Adequate Method of Vindicating Its Rights Other Than Immediate Intervention by This Court

      As demonstrated above, LLUHEC is a religious educational institution

exempt from NLRB jurisdiction pursuant to *Catholic Bishop* and *Great Falls*. The

medical residents and fellows who are the subject of the Board's proceedings are

stipulated to have teaching responsibilities. The NLRB is inflicting irreparable

harm on LLUHEC by forcing it to participate in an "illegitimate proceeding, led by

an illegitimate decisionmaker." *Axon Enterprises, Inc. v. FTC*, __ U.S. __, 2023

WL 2938328 at *9 (2023). Moreover, the irreparable harm being inflicted by this

unconstitutional proceeding is not the type of harm the appellate process

contemplated by Section 10 of the NLRA can address or undo. As such, judicial

review of the Board's exercise of jurisdiction over LLUHEC would come too late

to be meaningful without immediate intervention by this Court.

<blockquote>

1.     The Supreme Court in <u>*Axon Enterprises, Inc. v. FTC*</u>
<u>Determined Appellate Review Schemes Like the NLRA's Do</u>
<u>Not Provide Meaningful Judicial Review When a Party Is</u>
<u>Attacking the Legitimacy of the Administrative Proceeding</u>
<u>Itself</u>

</blockquote>

In *Axon Enterprises, Inc. v. FTC* and *Securities and Exchange Commission*

*et al. v. Cochran*,[7] the Supreme Court considered whether federal district courts

have subject matter jurisdiction to hear claims attacking the constitutional

legitimacy of administrative proceedings. The Court applied the three-factor

analysis developed in *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994), and

determined district courts <u>do</u> possess jurisdiction to hear such claims.

The petitioners in *Axon Enterprises* and *Cochran* filed suits in district court

alleging they were being "'being subjected' to 'unconstitutional agency authority'"

by virtue of administrative proceedings brought against them by, respectively, the

Federal Trade Commission ("FTC") and the Securities and Exchange Commission

("SEC"). *Axon Enterprises, Inc.*, __ U.S. __, 2023 WL 2938328 at *9. Both

---

[7] *Axon Enterprises* and *Cochran* presented substantially identical issues and were
decided by the Supreme Court in a single opinion. *See* __ U.S. __, 2023 WL
2938328 (2023).

petitioners requested the district court enjoin further administrative action, but their cases were dismissed for lack of subject matter jurisdiction. *Id.*

To determine whether the district courts had subject matter jurisdiction over the petitioners' allegations, the Supreme Court applied the three-element test from *Thunder Basin*. *Id.* at 6 (citing *Thunder Basin*, 510 U.S. at 212-213). The first element of the *Thunder Basin* test -- the only one relevant to the instant case -- examines whether a party may obtain meaning judicial review of their claim. *Id.*

Regarding this element, the Court examined the appellate review scheme created by the Federal Trade Commission Act ("FTC Act") and the Securities Exchange Act ("Exchange Act") to determine if Congress expressly precluded district court jurisdiction. *Id.* at 4. The Court noted both Acts delegate initial adjudication to an administrative law judge (*see* 16 C.F.R. §§ 3.21-3.56; and 17 C.F.R. §§ 201.221-201.360) whose decision may be appealed to the FTC or SEC for consideration and issuance of a final decision (*see* 16 C.F.R. §§ 3.52-3.54; and 17 C.F.R. §§ 2.0.410-201.411(a)). *Id.* at 4. Each agency's final decision is then reviewable in a court of appeals. *Id.*; *see also* 15 U. S. C. §78y(a)(1) and (3); 15 U.S.C. §45(c). In essence, "the agency effectively fills in for the district court, with the court of appeals providing judicial review." *Axon Enterprises*, *Inc.,* __ U.S. __ , 2023 WL 2938328 at *6.

13

After reviewing "the interaction between the alleged injury and the timing of review," the Court concluded the statutory review schemes available to the petitioners under the FTC Act and the Exchange Act *did not* provide meaningful judicial review. *Id.* at *9. The Court recognized even if a party is successful in asserting its constitutional claim in the administrative review process, it would still be subject "to an illegitimate proceeding, led by an illegitimate decisionmaker," and "as to that grievance, the court of appeals can do nothing." *Id.* Moreover, the Court noted such harm is "impossible to remedy once the proceeding is over, which is when appellate review kicks in" because "[a] proceeding that has already happened cannot be undone" and therefore appellate review of any final decision "would come too late to be meaningful." *Id.*

   2. <u>LLUHEC Has No Meaningful and Adequate Method of Vindicating Its Rights Under the NLRA's Appellate Review Process</u>

*Axon Enterprises* is crucial to the Court's consideration of the instant matter because the *Thunder Basin* analysis and the *Leedom* analysis share the element of whether meaningful judicial review of the alleged harm is available in the absence of district court jurisdiction. *Compare Thunder Basin*, 510 U.S. at 212-213 with *Nat'l Air Traffic Controllers Ass'n v. Fed. Serv. Impasses Panel,* 437 F.3d 1256, 1263 (D.C. Cir. 2006)(defining the second factor in the *Leedom* analysis as "that barring review by the district court 'would wholly deprive [the party] of a

14

meaningful and adequate means of vindicating its statutory rights.'")(internal

citations omitted). As such, especially given the similarities in both the claims

asserted by LLUHEC and the petitioners in *Axon Enterprises* and *Cochran* and the

statutory review schemes of the NLRA, the FTC Act and the Exchange Act, the

Supreme Court's holding that standard appellate review fails to provide

meaningful judicial review of claims attacking the constitutional legitimacy of

administrative proceedings should be determinative of the second *Leedom* element.

Here, LLUHEC has alleged that the NLRB proceedings to which it is being

subjected are unconstitutional and are therefore causing LLUHEC to suffer

irreparable harm. Indeed, the demonstrated harm present here is far more palpable

than the merely conjectural harms asserted by the petitioners in *Axon Enterprises*

and *Cochran.* As demonstrated above at pp. 10-11, it is clear the NLRB already

has violated *Catholic Bishop* and *Great Falls*, while the petitioners in *Axon*

*Enterprises* and *Cochran* had yet to show the agency action to which they were

being subjected was constitutionally impermissible.

Further, also like the petitioners' claims in *Axon Enterprises* and *Cochran*,

LLUHEC's claims of being subjected to unconstitutional administrative

proceedings "are impossible to remedy once the proceeding is over" because "[a]

proceeding that has already occurred cannot be undone." *Axon Enterprises, Inc.*, __

U.S. __, 2023 WL 2938328 at *9. As the Supreme Court recognized, the harm

arises from being subjected to an illegitimate administrative process, and not any particular finding made by the NLRB or decision made during that process. *See id.*

In this respect, *Axon Enterprises* echoes the Supreme Court's pronouncement in *Catholic Bishop*: "[i]t is not only the conclusions that may be reached by the Board which may impinge on rights guaranteed by the Religion Clauses, *but also the very process of inquiry leading to findings and conclusions."* 440 U.S. at 502 (emphasis added).

And lastly like in *Axon Enterprises*, the review available to LLUHEC under the NLRA's statutory scheme is nearly identical to those in the FTC Act and the Exchange Act, which the Supreme Court found deficient. Under the NLRA, similar to those other statutes, the agency brings administrative proceedings before an ALJ for initial fact finding and decision. *Compare* 29 C.F.R. §§ 120.35, 102.45 with 16 C.F.R §§ 3.21-3.56 and 17 C.F.R. 201.221-201.360. The next step under all three statutory schemes is an appeal of the ALJ's decision to the agency itself and the issuance of a "final decision." *Compare* 29 C.F.R. § 153(a) with 16 C.F.R §§ 3.52-3.54 and 17 C.F.R. 201.410-201.411(a). Following the NLRB's or FTC's or SEC's issuance final decision review is then available in a court of appeals. *Compare* 29 U.S.C. § 10(e) and (f) with 15 U.S.C. § 45(c) and 15 U.S.C § 78y(a)(1) and (3).

16

3.    <u>The Cases Relied On by the District Court to Support Its
Conclusion that LLUHEC Has Meaningful Judicial Review
Under the NLRA Are Distinguishable or Have Been
Superseded</u>

In its memorandum opinion, the District Court primarily relied upon three

cases to support its holding that appellate review under the NLRA's statutory

scheme affords LLUHEC meaningful judicial review of its First Amendment

claims. Doc: 25 pp. 5-6. Each of these cases is easily distinguishable or has been

superseded by the subsequent development of applicable law. Further, the District

Court incorrectly construed the relevant holding in each of these cases.

The District Court's reliance upon *Cox v. McCulloch*, 315 F.2d 48 (D.C. Cir.

1963), for the proposition that "*all* appellate review in the Court of Appeals must

be vitiated before a district court may exercise subject matter jurisdiction over a

challenge to NLRB proceedings" misstates the case's holding. Doc: 25 p. 5

(emphasis in original). In *Cox*, the appellant union asked the district court to enjoin

the Board from certifying the results of a representational election on the grounds

the prevailing union was not a "labor organization" as defined in Section 2(5) of

the NLRA. 315 F.2d at 49.

The D.C. Circuit ultimately found the district court lacked jurisdiction under

*Leedom,* not because the union had failed to "vitiate" appellate review, but because

the "appellant here failed properly to raise this issue before the Board, his

independent suit in the District Court lacks equity. We therefore decline to exercise

17

jurisdiction for this reason." *Id.* at 50. Indeed, this Court in *Cox* expressly acknowledged the NLRB may not avoid jurisdictional challenges when properly raised. *Id.* at 50. n.1.

Here, in contrast, LLUHEC raised the constitutional jurisdictional issue to both Region 31 and the Board itself.[8]

The District Court equally erred in asserting *NLRB v. Interstate Dress Carriers, Inc.*, 610 F.2d 99 (3d. Cir. 1979) "held that *Leedom* creates no jurisdiction for a 'pre-election suit.'" Doc: 25 p. 5. *Interstate Dress Carriers* nowhere so holds, but expressly recognizes, "the Supreme Court has, since the promulgation of ss 9(d) and 10(e) and (f), carved out a limited number of narrow exceptions to [pre-election review of Board representation decisions]. *Id.* at 106. One of the exceptions recognized as valid and discussed at length by the Third Circuit in *Interstate Dress Carriers* is *Leedom. Id.*[9]

---

[8] It is not LLUHEC's position that a party must raise a constitutional defect before the NLRB or engage in any other administrative exhaustion for a district court to possess subject matter jurisdiction pursuant to *Leedom*. Rather, a district court's jurisdiction arises as a federal question pursuant to 28 U.S.C. § 1331. Nonetheless, for the sake of efficiency and comity LLUHEC first asked the NLRB to decide the jurisdictional question and forbear pursuant to its *Bethany College* doctrine (derived from *Great Falls*) before subjecting LLUHEC to further administrative proceedings.

[9] The statement made in *Interstate Dress Carriers*, 610 F.2d at 106, that "it is not clear that the Court intended that employers . . . be able to assert pre-elections suits under *Kyne*" is wholly speculative, dicta and now superseded by *Axon Enterprises*. First, the Supreme Court in *Leedom* did not restrict its decision to unions and the

18

Lastly, *American Federation of Labor v. Labor Board* in no way held "a religious institution would have to wait until its appellate rights are perfected by an ultimate NLRB decision on the merits before it may sue in a Court of Appeals to vindicate its First Amendment freedoms." Doc: 25 p. 6. Rather, that case considered only whether the certification of an representation election constituted a "final decision" of the NLRB subject to appellate review and explicitly acknowledged it did not address "whether petitioners are precluded by the provisions of the [NLRA] from maintaining an independent suit in a district court to set aside the Board's action because contrary to the statute, and because it inflicts on petitioners an actionable injury otherwise irreparable." *Id.* at 404-405. Here, LLUHEC is not asserting the NLRB has made a "final decision," and is not seeking appellate review of any particular NLRB decision, final or otherwise. Rather, LLUHEC sought redress in the District Court for the irreparable harms being inflicted upon it by the NLRB, harms that cannot be remedied by appellate review under the NLRA.

---

hardship discussed therein is not unique to unions. Nor do unions somehow have an exclusive right to bring constitutional challenges. Indeed, it was purely by chance the petitioner in *Leedom* was a labor organization. Second, the statement is dicta because the Third Circuit made no affirmative holding that *Leedom* is not available to employers. Third, *Axon Enterprises* recognizes that Axon – an employer – had no meaningful judicial review for being subjected to an illegitimate administrative proceeding. *See* __ U.S. __, 2023 WL 2938328 at *6.

19

II.     **LLUHEC Satisfies Each Factor Considered by This Court for the Issuance of an Injunction Pending Appeal.**

An appellant seeking an injunction pending appeal must demonstrate: (1) a substantial likelihood of success on the merits; (2) it would suffer irreparable injury if the injunction is not granted; (3) an injunction would not substantially injure other interested parties; and (4) the public interest would be furthered by the injunction. D.C. Cir. R. 8(a)(1). *See Mills v. District of Columbia*, 571 F.3d 1304, 1308 (D.C. Cir. 2009). The third and fourth factors merge where the government is the opposing party. *See Karem v. Trump,* 960 F.3d 656, 668 (D.C. Cir. 2020).

A court must balance each of the four factors when determining whether to issue a preliminary injunction. *Mills*, 571 F.3d at 1308. But "[i]f the arguments for one factor are particularly strong, an injunction may issue even if the arguments in other areas are rather weak." *Id.*

Here, LLUHEC has made a compelling showing it has a strong likelihood of success on the merits, it is suffering irreparable injury, it will continue to suffer irreparable injury if the injunction pending appeal is not issued, and the public interest is furthered by the issuance of the injunction.

94502040v.4

### A.    LLUHEC Is Likely to Succeed on the Merits

LLUHEC has demonstrated it is likely to succeed on the merits because, as

shown above at pp. 10-11 it satisfies each of the three prongs of the *Great Falls*

test, the test adopted by the Board in *Bethany College supra*.[10]

### B.    LLUHEC Is Suffering Irreparable Harm and Will Continue to Do So Absent This Court's Intervention.

The Supreme Court and this Court have both recognized the violation of

First Amendment freedoms, even for a short period of time, constitutes irreparable

harm. *See e.g*., *Roman Catholic Diocese of Brooklyn v. Cuomo*, __ U.S. __, 141

S. Ct. 63, 67 (2020); *Pursuing America's Greatness v. Federal Election Comm'n,*

831 F.3d 500, 511 (D.C. Cir. 2016).

As demonstrated above at pp. 10-11, LLUHEC is a religious educational

institution exempt from NLRB jurisdiction, and the NLRB is violating LLUHEC's

First Amendment rights by exercising jurisdiction over it. Moreover, as also shown

above at pp. 14-6, the Supreme Court has held the appellate review available under

statutes like the NLRA *does not* and *cannot* provide a remedy to harms like those

already suffered by LLUHEC, or that it will continue to suffer as the Board

analyzes and weighs the many religious-centered arguments made by the Union,

---

[10] Nowhere in the NLRB's arguments before the District Court regarding LLUHEC's First Amendment claims does the Board contest that LLUHEC satisfies the *Great Falls* test, thereby conceding that indisputable point. Doc: 18, pp. 34-37.

including challenging the bona fides of the Seventh-day Adventist historical teachings about unions.

### C. The Public's and LLUHEC's Interest in First Amendment Rights Are Greater Than the Public Interests Embodied in the NLRA

When a party seeks an injunction against a federal agency like the NLRB, the harm to the other party and the public interest elements are combined because "the government's interest is the public interest." *Pursuing America's Greatness v. Fed. Election Comm'n,* 831 F.3d at 511. As this Court and others have recognized, "enforcement of an unconstitutional law is always contrary to the public interest." *Id.; see also Christian Legal Society v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006)("injunctions protecting First Amendment Freedoms are always in the public interest); *Defense Distributed v. US Department of State*, 865 F.3d 211, 213 (5th Cir. 2017)("the public interest . . . by definition, favors the vigorous protection of First Amendment rights"). And even the NLRB has recognized that the policy embodied in the NLRA is subordinate to constitutional rights and must give way when the two conflict. *See Bethany College*, 369 NLRB No. 98 slip op. at *7.

## III. This Appeal Should Be Expedited

LLUHEC requests this Court expedite LLUHEC's appeal and order a briefing schedule as proposed below.

Appellant's opening brief: May 15, 2023;

Appellee's response brief: May 29, 2023;

22

Appellant's reply: June 5, 2023;

Argument scheduled: June 12, 2023.

An expedited appeal is proper here pursuant to D.C. Cir. Rule 47.2 and because LLUHEC has shown "delay will cause irreparable injury and that the decision under review is subject to substantial challenge." D.C. Circuit Handbook § VIII.B at 34.

## **CONCLUSION**

For the reasons stated herein, this Court should grant LLUHEC's motion seeking an injunction pending appeal and expedite the appeal process as set forth in the proposed briefing schedule.

Respectfully submitted,

SEYFARTH SHAW LLP
*/s/ Michael D. Berkheimer*

Michael D. Berkheimer
John Toner
Mark A. Wagner
975 F Street
Washington, DC 20004
(202) 828-3560
Fax: (202) 641-9209
mberkheimer@seyfarth.com
jtoner@seyfarth.com
mwagner@seyfarth.com

Christian J. Rowley
560 Mission Street
Suite 3100
San Francisco, CA 94105-2930

(415) 544-1001
crowley@seyfarth.com

Joshua L. Ditelberg
233 S. Wacker Drive
Suite 8000
Chicago, IL 60606-6448
(312) 460-5505
jditelberg@seyfarth.com

Jeffrey Berman
2029 Century Park East
Suite 3500
Los Angeles, CA 90067-3021
(310) 201-1541
jberman@seyfarth.com

*Attorneys for Loma Linda University Health
Education Consortium*

Dated: May 1, 2023

94502040v.4

## **CERTIFICATE OF SERVICE**

I certify that on May 1, 2023 a true copy of Appellant Loma Linda – Inland Empire Consortium for Healthcare Education d/b/a Loma Linda University Health Education Consortium's foregoing Motion for Injunction Pending Appeal and to Expedite Appeal was filed via this Court's CM/ECF electronic filing system. I certify that all participants in this case are registered CM/ECF users and will be served by the CM/ECF system. A copy of this motion will also be emailed to opposing counsel at the below email addresses on May 1, 2023.

Kevin.Flanagan@nlrb.gov

Aaron.Samsel@nlrb.gov

Tyler.Wiese@nlrb.gov

*/s/ Michael D. Berkheimer*
Michael D. Berkheimer

May 1, 2023

25

## CERTIFICATE OF COMPLIANCE

This motion complies with the requirements of Fed. R. App. P. 27(d) and

Circuit Rule 27(d)(2)(A) because it has 5,175 words.

This motion also complies with the typeface requirements of Fed. R. App. P.

32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this

motion has been prepared in a proportionally spaced typeface using Microsoft

Word in 14-point Times New Roman font.

*/s/ Michael D. Berkheimer*
Michael D. Berkheimer

May 1, 2023

26

94502040v.4

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to Circuit Rule 27(a)(4) and 28(a)(1)(A), the below counsel of record certifies as follows:

## A. PARTIES

The following are parties in this Court:

1. Plaintiff/Appellant Loma Linda – Inland Empire Consortium for Healthcare Education d/b/a Loma Linda University Health Education Consortium.

2. Defendant/Appellee National Labor Relations Board

## B. RULINGS UNDER REVIEW

Plaintiff seek review of the District Court's April 11, 2023 final judgment entered by the Honorable Colleen Kollar-Kotelly. The ruling under review may be fount at page XX in the appendix. The ruling under review has no official citation.

## C. RELATED CASES

The case on review was not previously before this Court or any court other than that which resulted in the April 11, 2023 final judgment under appeal. There are no other related cases.

/s/ Michael D. Berkheimer
Michael D. Berkheimer

May 1, 2023

94502040v.4

**UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

| | |
|---|---|
| Loma Linda – Inland Empire Consortium | ) |
| For Healthcare Education | ) |
| d/b/a | ) |
| Loma Linda University Health | ) |
| Education Consortium | ) |
| 11175 Campus Street | ) |
| Loma Linda, CA 92354 | ) |
| | ) |
| Plaintiff/Appellant | ) |
| | ) No. 23-5096 |
| v. | ) |
| | ) |
| National Labor Relations Board | ) |
| 1015 Half Street, SE | ) |
| Washington, DC 20003 | ) |
| | ) |
| Defendant/Appellee | ) |

**CIRCUIT RULE 26.1 CORPORATE DISCLOSURE STATEMENT**

I, the undersigned counsel for Loma Linda – Inland Empire Consortium for
Healthcare Education d/b/a Loma Linda University Health Education Consortium
("LLUHEC") certify that to the best of my knowledge and belief that no parent
company or any publicly-held company has a 10% or greater ownership interest
(such as stock or partnership shares) in LLUHEC.

LLUHEC is a religious educational institution with the mission of teaching medical resident and fellows in a manner consistent with the teaching and healing ministries of Jesus Christ and the Seventh-day Adventist Church.

This representation is made in order that judges of this Court may determine the need for recusal.

Respectfully submitted,

SEYFARTH SHAW LLP

*/s/ Michael D. Berkheimer*

Michael D. Berkheimer (Bar No.: 53462*)*
Seyfarth Shaw LLP
975 F Street
Washington, DC 20004
(202) 828-3560
Fax: (202) 641-9209
sbrooks@seyfarth.com
mberkheimer@seyfarth.com
jtoner@seyfarth.com

May 1, 2023

# INDEX TO ADDENDUM

Order Dismissing Complaint for Lack of Subject Matter
    (D.D.C. April 11, 2023) ............................................................ A-1

Memorandum Opinion Denying Complaint for Lack of Subject Matter Jurisdiction
    (D.D.C. April 11, 2023) ............................................................ A-2

Excerpt from Union of American Physicians & Dentists Post-Hearing Brief filed
    with Region 31 of the National Labor Relations Board ................ A-8

National Labor Relations Board Unfair Labor Practice Charge
    31-CA-312728 .......................................................................... A-13

National Labor Relations Board Unfair Labor Practice Charge
    31-CA-3116434 ........................................................................ A-15

94502040v.4