# ADDENDUM

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LOMA LINDA—INLAND EMPIRE CONSORTIUM FOR HEALTHCARE EDUCATION,<br><br>　　Plaintiff<br><br>　　v.<br><br>NATIONAL LABOR RELATIONS BOARD,<br>　　Defendant. | Civil Action No. 23-0688 (CKK) |

**ORDER**
(April 11, 2023)

For the reasons stated in the accompanying Memorandum Opinion, it is hereby

**ORDERED**, that this case is **DISMISSED** for lack of subject matter jurisdiction. It is further

**ORDERED**, that Plaintiff's [6] Motion for Preliminary Injunction is **DENIED AS MOOT**. It is further

**ORDERED**, that Defendant's [20] Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) is **DENIED AS MOOT**.

**SO ORDERED**.

This is a final, appealable order.

Dated: April 11, 2023

　　　　　　　　　　　　　　　　　　　　　　/s/
　　　　　　　　　　　　　　　　　　　COLLEEN KOLLAR-KOTELLY
　　　　　　　　　　　　　　　　　　　United States District Judge

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LOMA LINDA—INLAND EMPIRE CONSORTIUM FOR HEALTHCARE EDUCATION,<br>    Plaintiff<br>    v.<br>NATIONAL LABOR RELATIONS BOARD,<br>    Defendant. | Civil Action No. 23-0688 (CKK) |

## MEMORANDUM OPINION
(April 11, 2023)

On February 13, 2023, Defendant National Labor Relations Board ("NLRB") commenced an administrative proceeding in California against Plaintiff Loma Linda—Inland Empire Consortium for Healthcare Education ("Plaintiff" or "Consortium") to determine whether the Consortium must collectively bargain with a local union which filed a petition with the NLRB. The Consortium, a California resident with no ties to the District of Columbia, has moved this Court for preliminary injunctive relief enjoining the proceedings. Binding appellate precedent instructs that a district court lacks jurisdiction over any challenge to an NLRB proceeding where a litigant may subsequently receive relief on appeal. Because such relief remains available to the Consortium, and upon consideration of the pleadings,[1] the relevant legal authorities, and the record as a whole, the Court *sua sponte* **DISMISSES** this case for lack of

---

[1] The Court's consideration has focused on the following documents:
- Plaintiff's Complaint, ECF No. 1;
- Plaintiff's Motion for Preliminary Injunction, ECF No. 6;
- Defendant's combined opposition and Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a), ECF No. 19; and
- Plaintiff's combined Opposition to the National Labor Relations Board's Motion to Transfer Venue and Reply to Opposition to Motion for Preliminary Injunction, ECF No. 20.

In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision. *See* LCvR 7(f).

jurisdiction and **DENIES AS MOOT** Plaintiff's [6] Motion for Preliminary Injunction and Defendant's [19] Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a).

## I. BACKGROUND

For present purposes, the Court shall take Plaintiff's allegations as true. The Consortium is a non-profit corporation affiliated with the Seventh-day Adventist Church ("Church"). Declaration of Dr. Dan Giang, ECF No. 6-2 ¶ 3 ("Giang Decl."). Although affiliated with hospitals and clinics in California that provide medical services, the Consortium's programming is limited to teaching medical students and residents how to provide medical care through "Christ-centered Graduate Medical Education." *Id.* at 8; Declaration of Dr. David Trim, ECF No. 6-15 ¶ 12 ("Trim Decl."). The Consortium defines such education as that which "continue[s] the healing ministry of Jesus Christ, 'to make man whole,' in a setting of advancing medical science and to provide a stimulating clinical and research environment for the education of physicians, nurses[,] and other health professionals." Giang Decl. at 32.

On February 13, 2023, a local chapter of the Union of American Physicians and Dentists ("Union") filed a petition with NLRB Region 31 on behalf of residents and fellows employed at Consortium institutions who wanted to unionize. ECF No. 6-9. This petition commenced "representation" proceedings, in which a local NLRB office determines whether a particular union may represent certain employees in collective bargaining with their employer. *See* 29 U.S.C. § 159(c). The administrative matter was docketed before the Regional Director for Region 31, covering much of southern California, as Case 31-RC-312064. ECF No. 6-9 at 4. Pursuant to 29 U.S.C. § 159, the Regional Director ordered the parties to provide initial briefing and set a representation (i.e., merits) hearing for March 6, 2023. *Id.* at 11.

A-3

On February 27, 2023, the Consortium requested that the Regional Director bifurcate the proceedings in order to first determine whether the NLRB had jurisdiction over the Union's petition. *Id.* at 24. The Consortium argued, as it does again here, that the NLRB lacked jurisdiction over the Consortium as a religious teaching institution. *Id.* at 24-32. The Regional Director denied this request, although they continued the representation hearing itself to March 13, 2023. *Id.* at 44. The Consortium then requested on March 2, 2023 that the NLRB reverse the Regional Director's decision to proceed to the representation hearing, which was denied by a three-member panel one day later. *Id.* at 59. The Consortium filed its operative complaint on March 14, 2023, and moved this Court on March 21, 2023 to preliminarily stay or vacate the representation proceedings as beyond the NLRB's jurisdiction. The representation hearing went forward and concluded on April 5, 2023, and post-hearing briefs are due April 19, 2023. ECF No. 23 at 1. If the Regional Director concludes that the Union may represent the Consortium's employees, then they will order an election by secret ballot to determine whether the Union may represent the employees in collective bargaining with the Consortium. *See* 29 U.S.C. § 153(b).

## II. LEGAL STANDARD

A plaintiff bears the burden of establishing that a federal court has subject matter jurisdiction. *Moms Against Mercury v. FDA*, 483 F.3d 824, 828 (D.C. Cir. 2007). "Federal courts are courts of limited jurisdiction . . . [and it] is to be presumed that a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A federal court can, and must, raise subject matter jurisdiction *sua sponte* if the parties do not, for federal courts are "forbidden—as courts of limited jurisdiction—from acting beyond their authority, and no action of the parties can confer subject-matter jurisdiction upon a federal court." *Athens Cmty. Hosp., Inc. v. Schweiker*, 686 F.2d 989, 992 (D.C. Cir. 1982) (cleaned up).

### III. DISCUSSION

As a general rule, Congress has vested only the federal Courts of Appeals with jurisdiction to review decisions of the NLRB. *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 47 (1938); 29 U.S.C. § 160(f). In *Leedom v. Kyne*, the Supreme Court recognized only the narrowest of exceptions. 358 U.S. 184, 188 (1958). *Leedom* sets forth a two-part test for a district court to exercise jurisdiction: (1) "the agency's alleged conduct must be contrary to a specific statutory prohibition that is both clear and mandatory;" and (2) "the party aggrieved must have no other meaningful and adequate mean[s] of vindicating its statutory rights." *Am. Fed. of Gov't Emps., Local 2510 v. FLRA*, 453 F.3d 500, 506 (D.C. Cir. 2006) (cleaned up). The *Leedom* exception is "extremely narrow in scope" and applies only to errors in the NLRB's jurisdiction. *Nat'l Air Traffic Controllers Ass'n AFL-CIO v. Fed. Serv. Impasses Panel*, 437 F.3d 1256, 1263 (D.C. Cir. 2006) ("*Air Traffic Controllers*"). For employers, "the triggering of *Leedom* jurisdiction is even more difficult, since the D.C. Circuit has stated that 'the *Leedom v. Kyne* remedy was not devised for the benefit of an employer.'" *Schwarz Partners Packaging, LLC v. NLRB*, 12 F. Supp. 3d 73, 84 (D.D.C. 2014) (BAH) (quoting *Mia. Newspaper Printing Pressmen's Union Local 46 v. McCulloch*, 322 F.2d 993, 997 n.7 (D.C. Cir. 1963)).

In an effort to invoke *Leedom*, Plaintiff relies predominantly on *Univ. of Great Falls v. NLRB*, 278 F.3d 1335 (D.C. Cir. 2002) and its progeny. There, the D.C. Circuit held that the NLRB has no jurisdiction over non-profit institutions that are religiously affiliated. *Id.* at 1347. As Plaintiff rightly notes, the NLRB has consistently run afoul of this principle, resulting in regular reversal and vacatur by the D.C. Circuit. *See Duquesne Univ. of the Holy Spirit v. NLRB*, 947 F.3d 824, 830-31 (D.C. Cir. 2020) (collecting cases). As *Duquesne* explains, as soon a religious educational institution alerts the NLRB to its status, the NLRB "'should [] know[]

A-5

immediately'" that the Free Exercise Clause places the institution "'patently beyond the NLRB's jurisdiction.'"  947 F.3d at 831 (quoting *Carroll Coll. v. NLRB*, 558 F.3d 568, 574 (D.C. Cir. 2009)).  Here, Plaintiff argues that it should again be "patently" obvious to the NLRB that it lacks jurisdiction over the Consortium, a non-profit, religious educational institution.

Even so, a clear jurisdictional defect does not alone endow a federal district court with jurisdiction over a challenge to an NLRB proceeding.  A plaintiff must also demonstrate that "barring review by the district court would wholly deprive [it] of a meaningful and adequate means of vindicating its statutory rights."  *Air Traffic Controllers*, 437 F.3d at 1263 (internal quotation marks and brackets omitted).  In an effort to meet this substantial hurdle, Plaintiff relies predominantly on two nonbinding, out of Circuit district-court cases: *Caulfield v. Hirsch*, No. 76-279, 1977 WL 15572 (E.D. Pa. 1977) and *McCormick v. Hirsch*, 460 F. Supp. 1337 (M.D. Pa. 1978).  In both cases, a district court vacated NLRB proceedings on First Amendment grounds.  1977 WL 1552, at *1; 360 F. Supp. at 1348.  Yet both decisions, nonbinding as they are, now stand on shaky ground even in their own Circuit, where the Third Circuit subsequently held that *Leedom* creates no jurisdiction for a "pre-election suit."  *NLRB v. Interstate Dress Carriers, Inc.*, 610 F.2d 99, 106 (3d Cir. 1976) (noting further that "it is not clear that the Court intended that employers, who do, after all, have [appellate] review [], be able to assert pre-election suits under [*Leedom*]").  In any event, binding appellate precedent instructs this Court that *all* appellate review in the Court of Appeals must be vitiated before a district court may exercise subject matter jurisdiction over a challenge to NLRB proceedings.  *See Cox v. McCulloch*, 315 F.2d 48, 50 (D.C. Cir. 1963).  Because appellate review is available to Plaintiff after NLRB's ultimate decision, *Leedom* does not apply under the law of this Circuit.  *See Schwarz*, 12 F. Supp. 3d at 87.

Lastly, Plaintiff relies on the general principle that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). Plaintiff is correct that a religious institution would have to wait until its appellate rights are perfected by an ultimate NLRB decision on the merits before it may sue in a Court of Appeals to vindicate its First Amendment freedoms. *See Am. Fed. of Labor v. NLRB*, 308 U.S. 401, 409 (1940) (holding that appellate review of representation proceedings is unavailable until a decision is issued). Yet constitutional claims have no "talismanic significance" in bypassing administrative review channeled exclusively to the federal Courts of Appeals. *Jarkesy v. SEC*, 803 F.3d 9, 18 (D.C. Cir. 2015).

## IV. CONCLUSION

For the foregoing reasons, the Court **DISMISSES** this action *sua sponte* for lack of subject matter jurisdiction and **DENIES AS MOOT** Plaintiff's [6] Motion for Preliminary Injunction and Defendant's [19] Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a). An appropriate order accompanies this memorandum opinion.

Dated: April 11, 2023

                                                                                      /s/
                                                          COLLEEN KOLLAR-KOTELLY
                                                          United States District Judge

DAVID A. ROSENFELD, Bar No. 058163
WEINBERG, ROGER & ROSENFELD
A Professional Corporation
1375 55th Street
Emeryville, California 94608
Telephone  (510) 337-1001
Fax  (510) 337-1023
E-Mail:  nlrbnotices@unioncounsel.net
        drosenfeld@unioncounsel.net

MICHAELA F. POSNER, Bar No. 339648
WEINBERG, ROGER & ROSENFELD
A Professional Corporation
800 Wilshire Blvd. Suite 1020
Los Angeles, California 90017
Telephone  (213) 380-2344
Fax  (213) 443-5098
E-Mail: mposner@unioncounsel.net

Attorneys for Petitioner UNION OF AMERICAN
PHYSICIANS & DENTISTS

UNITED STATES OF AMERICA

NATIONAL LABOR RELATIONS BOARD

REGION 31

| UNION OF AMERICAN PHYSICIANS & DENTISTS,<br><br>      Petitioner,<br><br> and<br><br>LOMA LINDA UNIVERSTITY HEALTH EDUCATION CONSORTIUM,<br><br>      Respondent. | No. 31-RC-312064<br><br>**PETITIONER'S POST HEARING BRIEF** |
|---|---|

155336\1357372

employees are not required to participate in religious activities, although they were held to a standard of conduct consistent with the perceptions of "Christian morality." *Id*.

In enforcing the Board's order for Hospital to bargain, the Ninth Circuit properly identified that *Catholic Bishop* is not applicable because the Supreme Court decision was based solely on the issue of Board jurisdiction over parochial schools.[1] *St. Elizabeth Community Hospital v. NLRB*, 708 F.2d 1436, 1440 (9th Cir. 1983). Indeed, the Ninth Circuit explained that religiously owned hospitals have a secular purpose:

> "Unlike a church school however, St. Elizabeth does not have a substantial religious character. Its primary purpose, like that of any secular hospital, is rather humanitarian, devoted to medical care for the sick. St. Elizabeth's principal function, unlike a parochial school, is to care and heal, not indoctrinate and propagate Catholicism…. Crucifixes, Bibles and other religious symbols appear throughout the hospital, hospital meetings begin with prayer, and prayer is said over the public address system twice daily. But employees and patients are not required to participate in any religious service and employees are not forced to perform any duties connected with religious service."

708 F.2d at 1441. (See also *Tressler Lutheran Home for Children v. NLRB*, 677 F.2d 302, 305 (3d Cir. 1982) (primary function of nursing home affiliated with Lutheran church was care of the elderly and infirm and performance of direct patient care predominated over religious atmosphere); *NLRB v. St. Louis Christian Home*, 663 F.2d 60, 65 (8th Cir. 1981) (church-operated center for battered children only "tangentially" related to religious mission of the church and operated the same way as a secular childcare institution)).

Despite this clear rule of this precedent, LLUHEC maintains that it should be exempt from Board jurisdiction. LLUHEC asserts that this entitlement is based on LLUHEC's mission statement, the presence of religious imagery throughout Loma Linda University Medical Center (LLUMC) and Loma Linda University Children's Hospital (LLUCH), the assertion of a unique

---

[1] The *Catholic Bishop* decision was before the 1974 Healthcare Amendments to the Act, which resolved any ambiguity of whether religious and nonprofit hospitals were under the Act in favor of Board jurisdiction. 708 F.2d at 1440. But the Ninth Circuit's logic still holds that Catholic Bishop is applied to religious *educational* institutions, not any religiously affiliated institution. *See Hanna* and *Salvation Army*, supra.

approach to "whole person care" ("WPC"), and on the practice of attendings and residents and fellows to pray with or for their patients. The Board has already rejected these as bases for a religious exemption.  See 259 NLRB 1135. One does not need to be a Seventh Day Adventist in order to work at Loma Linda Health, including LLUHEC residency and fellowship programs. Indeed, one does not need to be Christian, or even religious at all in order to work at Loma Linda Health (including LLUHEC).  Loma Linda treats patients of all religious backgrounds. Indeed while Loma Linda claims it offers "Christ-centered care" to all patients who would wish to receive it, patients who are not Christian or not religious do not receive a different standard or quality of care from physicians at Loma Linda.  Furthermore, Dr. Kelia Gerhardt testified that religion does not need to play a role in spiritual care or WPC because WPC simply adopts a compassion-based approach and recognition that human are multi-faceted and respond better to a holistic approach to healing. Dr. Gerhardt further testified that she saw a better demonstration of holistic patient care at the Loma Linda VA and RUHS than at LLUMC, both of which are public institutions, and that both of those facilities had chaplains that were able to provide the spiritual element of care that patients desired.

  Similar to *Hanna*, LLUH property is not directly owned by the SDA Church, and has completely lay-person executive and trustee boards, meaning the day-to-day control of the Employer is not directly in the hands of the Church.  Furthermore, LLUHEC's bylaws do not mandate that officers be members of the SDA Church.  Similar to *Hanna* and *St. Elizabeth*, LLUH facilities are licensed and regulated by the State of California.  Unlike *Hanna*, in the event of the dissolution of the LLUHEC, the property does not go to a church but instead goes to LLUH. Similar to *St. Elizabeth*, LLUHEC provides the secular service of healthcare and healing the sick, receives public funds, claims a religious approach and purpose for healthcare, contains religious imagery in the hospital, but did not require employees to be Catholic and did not force employees to participate in religious activities, and claimed to hold employees to a standard of conduct consistent with faith-based morality.  Finally, as was the case for the employees at issue in *Hanna*, *Salvation Army*, and *St. Elizabeth*, LLUHEC residents and fellows do not have

A-10

religious duties and do not engage in religious inculcation of patients and their families, or of more junior residents and fellows.

Numerous LLUHEC witnesses testified that one does not need to be a member of the SDA Church, a Christian, or religious at all in order to comply with LLUHEC's mission statement. Furthermore, any care provider who wishes to pray may do so, regardless of their religion, and if a patient requests prayer, it is the religion of the patient that dictates the practice. No LLUHEC witness testified that they were ever prohibited from praying with a patient when they worked at a non-Loma Linda facility, nor were they ever instructed that they were not permitted to pray with patients. Finally, Loma Linda's assertion that WPC is a uniquely Adventist concept significantly discounts the practice of medicine at other institutions. Dr. Evan Melville attended an osteopathic medical school and holds a D.O. degree. He testified that while attending medical school at the University of North Texas (a public institution), he learned a holistic approach to treating patients, and that part of the holistic approach includes the patient's spirituality if that is a part of their life. He also testified that a holistic approach to medicine incorporates the body, mind, and spirit of a patient and to look beyond the diagnosed condition. Dr. Courtney Martin, who also holds a D.O. degree and attended an osteopathic medical school, admitted on cross that osteopathic medicine considers a patient's lifestyle, mental state, and spirituality if that is important to a patient. She also admitted on cross that there is a preventive aspect to osteopathic medicine. Accordingly, all of the elements of Loma Linda's WPC that it asserts are uniquely Adventist are not actually unique to a religious approach to healthcare, and therefore must also be seen as a secular standard for the provision of medical care.

As was the case with Hanna Boys Center, the Salvation Army community correctional center, and St. Elizabeth Community Hospital, LLUHEC is secularly governed. All residents and fellows spend time at LLUMC and/or LLUCH, which are licensed and regulated by the State of California Department of Public Health. (Board Ex. 7.) LLUHEC residency and fellowship programs are accredited by the American Council of Graduate Medical Education ("ACGME"), which is a secular institution. Notably, residency and fellowship programs do not have to be

ACGME-accredited, and participation in ACGME accreditation is purely voluntary. LLUHEC programs also participate in the National Residency Match Program (NRMP or "the Match"), which is also secularly governed and purely voluntary. There is no dispute that LLU Health entities, including LLUHEC and its residents, are bound by HIPAA. (See testimony of David Trim.) There is no SDA church doctrine that governs patient privacy or other healthcare operations that would replace secular regulation. (Id.) Furthermore, LLUHEC receives public funds from the Department of Veterans Affairs (VA), MediCal CalMedForce grants, as well as Riverside County for its residency and fellowship programs. (LLUHEC Ex. 72, p.42.) LLUHEC indirectly receives public funds from the Center for Medicare and Medicaid services ("CMS") that are provided to medical centers that have residents and fellows working there. (Id.) Those funds go to LLUMC, which in turn help fund LLUHEC programs. (Id.)

Accordingly, LLUHEC is a secularly-regulated healthcare institution within the meaning of the Act. The fact that it is affiliated with the SDA Church does not differentiate its work from secular counterparts. Therefore the exercise of Board jurisdiction over the operation of LLUHEC is no different from the exercise of jurisdiction over any other residency or fellowship program at any other facility.

### B. The Ministerial Exception Does Not Apply To Healthcare Institutions Or Physicians

NLRB caselaw does not recognize a ministerial exception such as the one that exists in *Hosanna-Tabor Ev. Luth. Church v. EEOC*, 565 U.S. 171 (2012) ("*Hosanna-Tabor*"). The scope of such a ministerial exception applies to religious ministers and educators who are engaged in the practice of religion or religious education and inculcation. The function of the ministerial exception that is already covered by the *Catholic Bishop* test, as clarified by *Great Falls*. *See Catholic Bishop*, supra; *Great Falls*, supra. Accordingly, it is unnecessarily redundant to seek a ministerial exception in addition to the application of *Catholic Bishop*. As an initial note, claiming that residents and fellows are somehow engaged in religious ministry, either as ministers or teachers, concedes the employee status of these individuals since the ministerial

A-12

FORM NLRB-501
(3-21)

**UNITED STATES OF AMERICA
NATIONAL LABOR RELATIONS BOARD
CHARGE AGAINST EMPLOYER**

**DO NOT WRITE IN THIS SPACE**

Case 31-CA-312728    Date Filed 02/21/2023

**INSTRUCTIONS:**
File an original with NLRB Regional Director for the Region in which the alleged unfair labor practice occurred or is occurring

### 1. EMPLOYER AGAINST WHOM CHARGE IS BROUGHT

| | |
|---|---|
| a. Name of Employer<br>LLU – Health Ed Consortium | b. Tel. No. (909) 558-6131 ext. 66131<br>c. Cell No.<br>f. Fax No. (909) 558-0430 |
| d. Address (Street, city, state, and ZIP code)<br>See Attachment A | e. Employer Representative<br>Dr. Daniel Giang<br>President of Loma Linda Health |
| | g. e-Mail gmeo@llu.edu<br>h. Number of workers employed 830 |
| i. Type of Establishment (factory, mine, wholesaler, etc.)<br>Clinics | j. Identify principal product or service<br>Healthcare |

The above-named employer has engaged in and is engaging in unfair labor practices within the meaning of section 8(a), subsections (1) of the National Labor Relations Act, and these unfair labor practices are practices affecting commerce with the meaning of the Act, or these unfair labor practices are practices affecting commerce within the meaning of the Act and the Postal Reorganization Act..

2. Basis of the Charge *(set forth a clear and concise statement of the facts constituting the alleged unfair labor practices)*

Immediately after the Petition was filed by the UAPD to organize the Residents, the employer announced that it could not make any improvements in working conditions. This silly statement violates the law. UAPD made it clear that it has no objection to any improvements which Loma Linda will make in the resident program. The residents are convinced that any improvements will be insignificant and insulting just like the changes were made just before the Petition was filed. The Union seeks as a remedy an appropriate posting and an apology and reading by that President of Loma Linda Health.

4. Full name of party filing charge *(if labor organization, give full name, including local name and number)*

Union of American Physicians & Dentists

| | |
|---|---|
| 4a. Address (Street and number, city, state, and ZIP code)<br>520 Capital Mall, Suite 220<br>Sacramento, CA 95814 | 4b. Tel. No. (800) 585-6977<br>4c. Cell No. (909) 408-0445<br>4d. Fax No.<br>4e. e-Mail rflores@uapd.org |

5. Full name of national or international labor organization of which it is an affiliate or constituent unit *(to be filled in when charge is filed by a labor organization)*

American Federation of State, County & Municipal Employees, AFL-CIO

### 6. DECLARATION

I declare that I have read the above charge and that the statements are true to the best of my knowledge and belief.

*David A Rosenfeld* (signature)                DAVID A. ROSENFELD, Attorney
*(signature of representative or person making charge)*    *(Print/type name and title or office, if any)*

Address: Weinberg, Roger & Rosenfeld
1375 55th Street
Emeryville, CA 94608

February 21, 2023
*(date)*

Tel. No. (510) 337-1001
Office, if any, Cell No.
Fax No. (510) 337-1023
e-Mail nlrbnotices@unioncounsel.net
drosenfeld@unioncounsel.net

**WILLFUL FALSE STATEMENTS ON THIS CHARGE CAN BE PUNISHED BY FINE AND IMPRISONMENT (U.S. CODE, TITLE 18, SECTION 1001)**
**PRIVACY ACT STATEMENT**

Solicitation of the information on this form is authorized by the National Labor Relations Act (NLRA), 29 U.S.C. § 151 *et seq.* The principal use of the information is to assist the National Labor Relations Board (NLRB) in processing unfair labor practice and related proceedings or litigation. The routine uses for the information are fully set forth in the Federal Register, 71 Fed. Reg. 74942-43 (Dec. 13, 2006). The NLRB will further explain these uses upon request. Disclosure of this information to the NLRB is voluntary; however, failure to supply the information will cause the NLRB to decline to invoke its processes.

**ATTACHMENT A**

1. Loma Linda University Medical Center
   1234 Anderson Street
   Loma Linda, CA 92354

2. Riverside University Medical Center
   26520 Cactus Avenue
   Moreno Valley, CA 92555

3. VA Loma Linda Healthcare System
   11201 Benton Street
   Loma Linda, CA 92357

4. Dignity Health Center St Bernadine
   2101 North Waterman Avenue
   San Bernardino, CA 92411


1\1342189

FORM NLRB-501
(3-21)

UNITED STATES OF AMERICA
NATIONAL LABOR RELATIONS BOARD
**CHARGE AGAINST EMPLOYER**

**DO NOT WRITE IN THIS SPACE**

Case 31-CA-316434    Date Filed 04/18/2023

**INSTRUCTIONS:**
File an original with NLRB Regional Director for the Region in which the alleged unfair labor practice occurred or is occurring

### 1. EMPLOYER AGAINST WHOM CHARGE IS BROUGHT

| | |
|---|---|
| a. Name of Employer<br>Loma Linda Health Education Consortium | b. Tel. No. (909) 558-0430 |
| | c. Cell No. |
| | f. Fax No. |
| d. Address *(Street, city, state, and ZIP code)*<br>1234 Anderson Street, Loma Linda, CA 92354 | e. Employer Representative<br>Dr. Daniel Giang, President |
| | g. e-Mail gmeo@llu..edu |
| | h. Number of workers employed<br>250+ |
| i. Type of Establishment *(factory, mine, wholesaler, etc.)*<br>Hospital/Medical Center ad Clinics | j. Identify principal product or service<br>Health Care Services |

The above-named employer has engaged in and is engaging in unfair labor practices within the meaning of section 8(a), subsections (1) and (list subsections) 8(a)(3), 8(a)(4) of the National Labor Relations Act, and these unfair labor practices are practices affecting commerce with the meaning of the Act, or these unfair labor practices are practices affecting commerce within the meaning of the Act and the Postal Reorganization Act.

2. Basis of the Charge *(set forth a clear and concise statement of the facts constituting the alleged unfair labor practices)*

Within the six months immediately preceding the filing of this charge, the above-named employer, by and through its officers and/or agents, violated sections 8(a)(1), 8(a)(3) and 8(a)(4) of the Act by retaliating against Dr. Kevin Hong for his testimony in representation proceedings for case 31-RC-312064 by failing to authorize a new posting in a video surveilled area for his organization to view after a prior poster was defaced with homophobic remarks. After the Employer was made aware of the incident, Human Resources refused to investigate the matter and the Employer unreasonably delayed in assuring continued access to available funding for the organization.

3. Full name of party filing charge *(if labor organization, give full name, including local name and number)*

Union of American Physicians and Dentists

| | |
|---|---|
| 4a. Address *(Street and number, city, state, and ZIP code)*<br>520 Capitol Mall, Suite 220<br>Sacramento, CA 95814 | 4b. Tel. No. |
| | 4c. Cell No. |
| | 4d. Fax No. |
| | 4e. e-Mail |

5. Full name of national or international labor organization of which it is an affiliate or constituent unit *(to be filled in when charge is filed by a labor organization)*

American Federation of State, County, and Municipal Employees AFL-CIO

### 6. DECLARATION

I declare that I have read the above charge and that the statements are true to the best of my knowledge and belief.

*Michaela Posner* (signature)    Michaela F. Posner
*(signature of representative or person making charge)*    *(Print/type name and title or office, if any)*

Address: Weinberg, Roger & Rosenfeld
800 Wilshire Boulevard, Suite 1020
Los Angeles, CA 90017

4/18/2023
*(date)*

Tel. No. (213) 380-2344
Office, if any, Cell No.
Fax No.
e-Mail mposner@unioncounsel.net
nlbnotices@unioncounsel.net

**WILLFUL FALSE STATEMENTS ON THIS CHARGE CAN BE PUNISHED BY FINE AND IMPRISONMENT (U.S. CODE, TITLE 18, SECTION 1001)**
**PRIVACY ACT STATEMENT**

Solicitation of the information on this form is authorized by the National Labor Relations Act (NLRA), 29 U.S.C. § 151 *et seq.* The principal use of the information is to assist the National Labor Relations Board (NLRB) in processing unfair labor practice and related proceedings or litigation. The routine uses for the information are fully set forth in the Federal Register, 71 Fed. Reg. 74942-43 (Dec. 13, 2006). The NLRB will further explain these uses upon request. Disclosure of this information to the NLRB is voluntary; however, failure to supply the information will cause the NLRB to decline to invoke its processes.