No. 23-5096

# UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

**LOMA LINDA-INLAND EMPIRE CONSORTIUM FOR HEALTHCARE EDUCATION D/B/A LOMA LINDA UNIVERSITY HEALTH EDUCATION CONSORTIUM**

**Plaintiff/Appellant**

**v.**

**NATIONAL LABOR RELATIONS BOARD**

**Defendant/Appellee**

—————————————

**NLRB'S OPPOSITION TO APPELLANT'S EMERGENCY MOTION FOR INJUNCTION PENDING APPEAL**
—————————————

DAWN L. GOLDSTEIN
*Acting Deputy Associate General Counsel*

KEVIN P. FLANAGAN
*Supervisory Attorney*

DAVID P. BOEHM
AARON SAMSEL
TYLER JAMES WIESE
ANDREW ZIAJA
*Trial Attorneys*

*National Labor Relations Board*
*Contempt, Compliance, and Special Litigation Branch*
1015 Half Street, S.E., 4th Floor
Washington, D.C. 20570
(952) 703-2891

# Table of Contents

I.   Factual Background ......................................................................2

   A.   Proceedings Before the National Labor Relations Board .............................2

   B.   Federal Court Proceedings ...........................................................4

II.  Legal Standard .........................................................................5

III. Argument ...............................................................................6

   A.   The Consortium is unable to establish a likelihood of success on the merits because it cannot establish jurisdiction for its claims.............................6

     i.   The Consortium has not raised a "strong and clear" constitutional claim....9

     ii.  The Consortium may obtain meaningful review if and when these proceedings result in a final Board order. .......................................15

   B.   Other factors weigh heavily against an injunction pending appeal. ...........17

     i.   The Consortium's motion must be denied because it has failed to show a concrete and imminent harm that an injunction could remedy. .......................17

     ii.  The balance of equities and public interest strongly weigh against the injunctive relief requested. ...............................................20

IV.  Conclusion .............................................................................22

# Table of Authorities

*Alcresta Therapeutics, Inc. v. Azar,* 318 F. Supp. 3d 321 (D.D.C. 2018) ................5

*Am. Airlines, Inc. v. Herman*, 176 F.3d 283 (5th Cir. 1999) ...................................13

*American Federation of Labor v. NLRB* ("*AFL*"), 308 U.S. 401 (1940) .................6

*Axon Enterprise, Inc. v. FTC,* 215 L. Ed. 2d 151 (2023) ........................................16

*Bd. of Governors, Fed. Reserve Sys. v. MCorp Fin., Inc.,* 502 U.S. 32 (1991) ........8

*Boston Med. Ctr. Corp.*, 330 NLRB 152 (1999) ......................................................22

*Canadian Am. Oil Co. v. NLRB,* 82 F.3d 469 (D.C. Cir. 1996) ...............................7

*Catholic High Sch. Ass'n of Archdiocese of N.Y. v. Culvert*, 753 F.2d 1161 (2d Cir. 1985) ......................................................................................................................14

*Charlie Rossi Ford, Inc. v. Price*, 564 F.2d 372 (9th Cir. 1977) (per curiam).........7

*Duquesne Univ. of the Holy Spirit v. NLRB,* 947 F.3d 824 (D.C. Cir. 2020)... 10, 15

*Goethe House N.Y., German Cultural Ctr. v. NLRB*, 869 F.2d 75 (2d Cir. 1989)...7, 15

*Gold Coast Rest. Corp. v. NLRB*, 995 F.2d 257 (D.C. Cir. 1993)..........................20

*Grutka v. Barbour,* 549 F.2d 5 (7th Cir. 1977).......................................................14

*Hartz Mountain Corp. v. Dotson*, 727 F.2d 1308 (D.C. Cir. 1984) ........................9

*Int'l Bhd. of Teamsters v. Bhd. of Ry., Airline & S.S. Clerks*, 402 F.2d 196 (D.C. Cir. 1968) .........................................................................................................13

*Leedom v. Kyne,* 358 U.S. 184 (1958).......................................................................8

*McCulloch v. Libbey-Owens-Ford Glass Co.*, 403 F.2d 916 (D.C. Cir. 1968).. 7, 20

*Mia. Newspaper Printing Pressmen's Union Loc. 46 v. McCulloch*, 322 F.2d 993 (D.C. Cir. 1963) ..............................................................................................16

*Mid Am. Health Servs.*, 247 NLRB 752 (1980)......................................................12

*Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41 (1938) ......................... 6, 7, 8

*Nat'l Air Traffic Controllers Ass'n v. Fed. Serv. Impasses Panel*, 437 F.3d 1256 (D.C. Cir. 2006) ......................................................................................... 8, 15, 17

*NLRB v. Catholic Bishop of Chi.,* 440 U.S. 490 (1978) ........................ 9, 10, 12, 14

*NLRB v. Hanna Boys Ctr.*, 940 F.2d 1295 (9th Cir. 1991)......................................10

*NLRB v. Salvation Army of Mass. Dorchester Day Care Ctr.*, 763 F.2d 1 (1st Cir. 1985) ..................................................................................................................10

*NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132 (1975)...............................................6

*NLRB v. St. Louis Christian Home,* 663 F.2d 60 (8th Cir. 1981)...........................10

*NLRB v. World Evangelism, Inc.*, 656 F.2d 1349 (9th Cir. 1981)...........................10

*Physicians Nat'l House Staff Ass'n v. Fanning*, 642 F.2d 492 (D.C. Cir. 1980) (en banc)...................................................................................................................13

*Pursuing Am.'s Greatness v. FEC*, 831 F.3d 500 (D.C. Cir. 2016) ........................6

*S. Jersey Catholic Sch. Teachers Org. v. St. Teresa of the Infant Jesus Church Elem. Sch.*, 696 A.2d 709 (N.J. 1997) ....................................................14

*Saint Xavier Univ.* , 365 NLRB No. 54 (2017)........................................................10

*Salvation Army,* 345 NLRB 550 (2005) ..................................................................10

*St. Elizabeth Comty. Hosp. v. NLRB,* 708 F.2d 1436 (9th Cir. 1983) ...................10

*Tressler Lutheran Home for Child. v. NLRB,* 677 F.2d 302 (3d Cir. 1982)............10

*Ukiah Adventist Hosp.*, 332 NLRB 602 (2000) .....................................................22

*United Food & Com. Workers, Loc. 400 v. NLRB,* 694 F.2d 276 (D.C. Cir. 1982) .9

*Univ. of Great Falls v. NLRB*, 278 F.3d 1335 (D.C. Cir. 2002)...................... 10, 15

*Wagner v. Taylo*r, 836 F.2d 566 (D.C. Cir. 1987)....................................................18

*Winter v. Nat. Res. Def. Council*, 555 U.S. 7 (2008) ......................................... 6, 18

*Wis. Gas Co. v. FERC*, 758 F.2d 669 (D.C. Cir. 1985)....................................17, 18

## Statutes

29 U.S.C. § 152(14) ............................................................................................ 3, 12

29 U.S.C. § 159(c)(1)................................................................................................2

29 U.S.C. § 159(d) ....................................................................................................7

29 U.S.C. § 159(e) ....................................................................................................7

29 U.S.C. § 160(e) ..................................................................................................16

## Other Authorities

Representation-Case Procedures, 79 Fed. Reg. 74,307 (Dec. 15, 2014)...................3

## Regulations

29 C.F.R. § 102.67 ....................................................................................................4

29 C.F.R. § 102.69 ....................................................................................................7

This Court should deny the Emergency Motion for an Injunction Pending Appeal filed by Appellant Loma Linda-Inland Empire Consortium for Healthcare Education d/b/a Loma Linda University Healthcare Education Consortium ("Consortium"). The requested injunction is an audacious attempt to short-circuit the National Labor Relations Board's administrative processes and prevent hundreds of medical residents and fellows employed by the Consortium from even having the chance to vote for or against union representation.

The Consortium has failed to establish a likelihood of success on the merits because, as the district court properly concluded, binding precedent precludes exercising jurisdiction over the Consortium's claims in this posture. Nor has the Consortium shown that it will be irreparably harmed if the NLRB's administrative processes are allowed to continue. Moreover, the injunctive relief the Consortium seeks here would undeniably harm, perhaps irreparably, the ability of residents and fellows to exercise rights protected by the National Labor Relations Act ("NLRA"). Finally, the Consortium's peculiar delay in seeking injunctive relief from the district court and this Court belie any purported need for urgent relief. Accordingly, this Court should deny the Consortium's motion.

1

## I.   FACTUAL BACKGROUND

### A. Proceedings Before the National Labor Relations Board

On February 13, 2023,[1] the Union of American Physicians & Dentists, American Federation of State, County & Municipal Employees, AFL-CIO ("Union") filed a representation petition in Case 31-RC-312064 with the NLRB's Region 31 office in Los Angeles, California. The Union is seeking to represent a bargaining unit of approximately eight-hundred medical residents and fellows employed by the Consortium. Region 31's Regional Director scheduled a hearing to begin on March 6 to determine whether "a question of representation exists" within the meaning of Section 9(c)(1) of the NLRA.[2]

On February 27, the Consortium filed a motion with the Regional Director seeking to 1) bifurcate the question of the NLRB's jurisdiction based on alleged First Amendment concerns related to the Consortium's religious mission, and 2) delay the hearing until March 13. The Regional Director denied bifurcation but moved the hearing date to March 13. The Consortium then requested that the Board review the denial of bifurcation, but the Board summarily denied that request on March 13.

That same day, the parties—that is, the Union and the Consortium— appeared before an NLRB hearing officer for the hearing. At the outset, the

---

[1] All dates hereinafter in 2023 unless otherwise noted.

[2] 29 U.S.C. § 159(c)(1).

Consortium verbally moved to adjourn, noting that it would soon seek a preliminary injunction from a federal district court. The Regional Director instructed the hearing officer to deny the motion to adjourn. The parties then presented their evidence on the merits of the contested issues. Among other items, the parties disputed whether the Consortium qualified as an educational institution as opposed to a "healthcare institution,"[3] and whether the residents and fellows in the proposed unit qualified as faculty and/or students. The hearing concluded on April 5, 2023, after 12 days of record testimony. The parties filed post-hearing briefs on April 19, 2023, offering distinctly different views on the Consortium's status and the responsibilities of residents and fellows in the petitioned-for unit.[4]

Next, the Regional Director for NLRB Region 31 will issue a written decision addressing whether a question of representation exists and, if appropriate, direct a secret-ballot election.[5] The timing of any potential election is crucial, because the petitioned-for unit of residents and fellows will substantially turn over

---

[3] *See* 29 U.S.C. § 152(14).

[4] *See* Consortium Post-Hr'g Br. to Regional Director, 31-RC-312064 (Apr. 19, 2023), *available at* https://apps.nlrb.gov/link/document.aspx/09031d4583a31a5e and Union Post-Hr'g Br. to Regional Director, 31-RC-312064 (Apr. 19, 2023), *available at* https://apps.nlrb.gov/link/document.aspx/09031d4583a317d5.

[5] As the Board has explained, "a question of representation cannot arise under the [NLRA] unless the employees in the unit are employed by an employer covered by the Act." Representation-Case Procedures, 79 Fed. Reg. 74,307, 74,398 n.423 (Dec. 15, 2014).

at the end of June.[6] Accordingly, any delay in the Regional Director's decision could significantly impact the pool of eligible voters in any directed election. Should the Regional Director order an election, the Consortium may request the Board's immediate review, and it may also ask the Board to stay the election or impound the ballots pending the completion of review.[7]

In addition, the Union has filed two unfair-labor-practice charges against the Consortium (Cases 31-CA-312728 and 31-CA-316434) alleging NLRA violations. Region 31 is currently investigating the merits of both charges.

### B. Federal Court Proceedings

Meanwhile, after the representation hearing began, the Consortium filed a complaint with the District Court for the District of Columbia on March 14, seeking an order requiring the Board "to immediately dismiss" the representation petition and the first unfair-labor-practice charge.[8] The complaint asserts that the Board's exercise of jurisdiction over the Consortium violates the First Amendment, and that any future Board order requiring the Consortium to bargain with the

---

[6] *See* Consortium Post-Hr'g Br. to Regional Director, 31-RC-312064, at 151 ("186 residents or fellows [are] expected to depart on June 30, 2023 (out of 801 total residents and fellows)"), *available at* https://apps.nlrb.gov/link/document.aspx/09031d4583a31a5e.

[7] See 29 C.F.R. § 102.67(c), (j).

[8] Doc. 1, ¶ 1. "Doc." references are to the ECF docket in the underlying district court proceeding.

4

Union would violate the Religious Freedom Restoration Act (RFRA). The Consortium moved for a preliminary injunction one week later, but notably, did not seek a temporary restraining order to stop the then-ongoing representation hearing. The Board opposed preliminary relief on March 31, and filed a cross-motion to transfer the matter to the Central District of California.

On April 11, the District Court (by Senior Judge Colleen Kollar-Kotelly) denied the Consortium's motion, dismissed the Consortium's complaint *sua sponte* for lack of subject-matter jurisdiction, and denied as moot the NLRB's cross-motion to transfer. Relying on "binding appellate precedent," the District Court concluded that it "lacks jurisdiction over any challenge to an NLRB proceeding where a litigant may subsequently receive relief on appeal."[9]

The Consortium then waited over two weeks, until April 27, to file its notice of appeal. It waited another four days, until May 1, to file its Emergency Motion for Injunction Pending Appeal and to Expedite Appeal. The Consortium's new motion seeks relief solely on First Amendment grounds.

## II.    LEGAL STANDARD

"The standards for evaluating a motion for an injunction pending appeal are substantially the same as those for issuing a preliminary injunction."[10] Moreover,

---

[9] Doc. 25, at 1.

[10] *Alcresta Therapeutics, Inc. v. Azar,* 318 F. Supp. 3d 321, 324 (D.D.C. 2018).

5

"[a] preliminary injunction is an extraordinary remedy never awarded as of right."[11] To secure an injunction, a movant "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."[12] The public interest and balance of equities factors merge where, as here, the government is a party "because the government's interest *is* the public interest."[13]

## III.    ARGUMENT

### A. The Consortium is unable to establish a likelihood of success on the merits because it cannot establish jurisdiction for its claims.

For over eighty years, it has been settled law that NLRB proceedings are subject to judicial review only in circuit courts, and only after the Board issues a final order in an unfair-labor-practice case.[14] In *American Federation of Labor v. NLRB* ("*AFL*"),[15] the Supreme Court held that this limitation on judicial review also applies to union-representation cases, which culminate with certifications, not

---

[11] *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 24 (2008).

[12] *Id.* at 20.

[13] *Pursuing Am.'s Greatness v. FEC*, 831 F.3d 500, 511 (D.C. Cir. 2016) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)).

[14] *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 48, 51 (1938); *see also NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 138, 155 (1975).

[15] 308 U.S. 401, 409-11 (1940).

orders.[16] As a consequence, only circuit courts may review actions, orders, or decisions arising from an NLRB representation case, and only when a certification later serves as the basis of an unfair-labor-practice finding, such as when an employer refuses to bargain.[17]

This path to review affords parties challenging Board action "an adequate opportunity to secure judicial protection against possible illegal action on the part of the Board."[18] This is so because Board orders are not self-enforcing, and "until the Board's order has been affirmed by the appropriate . . . Court of Appeals, no penalty accrues for disobeying it."[19] Indeed, the Supreme Court has emphasized the comprehensive nature of appellate review available at the conclusion of NLRB unfair-labor-practice cases: "*all questions of the jurisdiction of the Board* and the

---

[16] After a representation election, the Regional Director will normally issue of a certification of results, or if the union prevails in the election, a certification of representative. *See* 29 U.S.C. § 159(e); 29 C.F.R. § 102.69(b), (h).

[17] 29 U.S.C. § 159(d); *see Canadian Am. Oil Co. v. NLRB*, 82 F.3d 469, 471, n.1 (D.C. Cir. 1996). Courts within and outside this Circuit have thus repeatedly and consistently dismissed lawsuits like this one in which an employer seeks premature judicial review of an NLRB representation case. *See, e.g.*, *Goethe House N.Y., German Cultural Ctr. v. NLRB*, 869 F.2d 75, 80 (2d Cir. 1989); *Charlie Rossi Ford, Inc. v. Price*, 564 F.2d 372, 373 (9th Cir. 1977) (per curiam); *McCulloch v. Libbey-Owens-Ford Glass Co.*, 403 F.2d 916, 917-18 (D.C. Cir. 1968).

[18] *Myers*, 303 U.S. at 48.

[19] *Id.*

7

regularity of its proceedings, *all questions of constitutional right or statutory authority* are open to examination by the court."[20]

The sole exception to this preclusive jurisdictional rule, first enunciated in *Leedom v. Kyne*, allows a district court to exercise jurisdiction "to strike down an order of the Board made in excess of its delegated powers and contrary to a specific prohibition in the Act,"[21] but only "'[i]f the absence of jurisdiction of the federal courts [would] mean[] a sacrifice or obliteration of a right which Congress has created.'"[22] "Thus, in order to justify the exercise of [*Kyne*] jurisdiction, a plaintiff must show, first, that the agency has acted 'in excess of its delegated powers and contrary to a specific prohibition' which 'is clear and mandatory,' *and*, second, that barring review by the district court 'would wholly deprive [the party] of a meaningful and adequate means of vindicating its statutory rights.'"[23] These extraordinarily narrow requirements are conjunctive.[24]

---

[20] *Id.* at 49 (emphasis added) (quoting *NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 47 (1937)).

[21] *Leedom v. Kyne,* 358 U.S. 184, 188 (1958).

[22] *Id.* at 190 (quoting *Switchmen's Union v. Nat'l Mediation Bd.*, 320 U.S. 297, 300 (1943)).

[23] *Nat'l Air Traffic Controllers Ass'n v. Fed. Serv. Impasses Panel*, 437 F.3d 1256, 1263 (D.C. Cir. 2006) (citation omitted) (emphasis added).

[24] *Bd. of Governors, Fed. Reserve Sys. v. MCorp Fin., Inc.*, 502 U.S. 32, 43 (1991).

This Court has held that jurisdiction under *Kyne* might also extend to "strong and clear" constitutional claims.[25] But even so, "any colorable support for the Board's ruling should be treated as a jurisdictional defect dictating dismissal."[26] As explained below, such colorable support exists here. And the fact that the Board's actions here may be reviewed at the conclusion of its unfair-labor-practice proceedings is likewise fatal to jurisdiction under *Kyne*.

 i. The Consortium has not raised a "strong and clear" constitutional claim.

 The Consortium's constitutional claim rests primarily on the Supreme Court's decision in *NLRB v. Catholic Bishop of Chicago*.[27] There, the Court applied the doctrine of constitutional avoidance and held that the NLRB could not assert jurisdiction over teachers at religious schools, absent a clear congressional instruction to the contrary (which the court found was not present).[28] The Court's analysis emphasized "the critical and unique role of the teacher in fulfilling the mission of a church-operated school."[29]

---

[25] *United Food & Com. Workers, Loc. 400 v. NLRB*, 694 F.2d 276, 279 (D.C. Cir. 1982).

[26] *Hartz Mountain Corp. v. Dotson*, 727 F.2d 1308, 1313-14 (D.C. Cir. 1984) (quoting R. GORMAN, BASIC TEXT ON LABOR LAW, 64-65 (1976)).

[27] *NLRB v. Catholic Bishop of Chi.,* 440 U.S. 490 (1978).

[28] *Id.* at 507.

[29] *Id.* at 501.

Following *Catholic Bishop,* courts have concluded that its holding is limited to educational institutions.[30] It is equally clear that *Catholic Bishop* is "confined to Board jurisdiction over teachers. Other employees [of religious schools], whether professional or 'blue collar,' are expressly excluded from the ruling."[31] As such, cases applying *Catholic Bishop*'s "faculty exception" show that there is a firm distinction between educators and non-educators at these institutions.[32] In addition, *Catholic Bishop* does not apply to religious "healthcare institutions," which Congress explicitly intended to include within the NLRA's jurisdiction, as discussed further below.[33]

---

[30] *See, e.g., Duquesne Univ. of the Holy Spirit v. NLRB,* 947 F.3d 824, 832 (D.C. Cir. 2020) (holding that *Catholic Bishop* applies to the "exercise of jurisdiction in cases involving religious schools and their teachers or faculty"); *Univ. of Great Falls v. NLRB*, 278 F.3d 1335, 1343-44 (D.C. Cir. 2002) (*Catholic Bishop* doctrine applies to a "school, college, or university" holding itself out as religious to "students, faculty and community"); *St. Elizabeth Comty. Hosp. v. NLRB,* 708 F.2d 1436, 1443 (9th Cir. 1983); *Tressler Lutheran Home for Child. v. NLRB,* 677 F.2d 302, 305 (3d Cir. 1982); *NLRB v. St. Louis Christian Home,* 663 F.2d 60, 65 (8th Cir. 1981); *Salvation Army,* 345 NLRB 550, 550–51 (2005).

[31] *NLRB v. Hanna Boys Ctr.*, 940 F.2d 1295, 1301 (9th Cir. 1991).

[32] *See, e.g., Saint Xavier Univ.* , 365 NLRB No. 54, slip op. at 4 (2017); *NLRB v. Salvation Army of Mass. Dorchester Day Care Ctr.*, 763 F.2d 1, 6 (1st Cir. 1985); *Tressler Lutheran Home for Child.,* 677 F.2d at 305; *NLRB v. World Evangelism, Inc.*, 656 F.2d 1349, 1353 (9th Cir. 1981); *St. Louis Christian Home*, 663 F.2d at 64.

[33] *Catholic Bishop,* 440 U.S. at 505–06.

These limitations on the sweep of *Catholic Bishop*'s holding expose the deficiencies of the Consortium's attempt to show a "strong and clear" constitutional violation here. As a threshold matter, there is a substantial question of fact regarding whether the Consortium is an *educational* institution. The Consortium points to the accreditation of its residency and fellowship programs to support its position that it is "exclusively an educational institution."[34] But the Union asserts in the pending administrative proceeding that the Consortium does not grant degrees or establish its own curriculum, does not employ the attending practitioners who evaluate progress, and does not receive tuition payments.

In addition, for the Supreme Court's holding in *Catholic Bishop* and its progeny to apply here, the residents and fellows employed by the Consortium must also fall within the "faculty" exception. The Consortium assures this Court that its residents and fellows are "faculty" because they have some "teaching responsibilities."[35] But the Union points out that residents and fellows are primarily responsible for patient care, spend most of their time in hands-on practice rather than didactic activities, and spend less than five to ten percent of their time interacting with medical students. Moreover, the Union claims that residents and

---

[34] Mot. at 3 & n.1. "Mot." references are to the Consortium's Emergency Motion for Injunction Pending Appeal.

[35] Mot. at 10.

fellows do not exercise authority over those medical students, as would a professor.[36]

The Union and the Consortium also dispute whether the Consortium is a "healthcare institution" under the NLRA.[37] This status is important because in 1974 Congress amended the NLRA to cover non-profit healthcare institutions. In so doing, Congress manifested an affirmative intention to bring religious healthcare institutions within the coverage of the Act.[38] This precludes any reliance on the constitutional avoidance canon that suffused *Catholic Bishop*'s reasoning. Here too, while the Consortium claims that it is not engaged in patient care,[39] the Union responds that the "main service that residents and fellows provide . . . is

---

[36] Union Post-Hr'g Br. to Regional Director, 31-RC-312064, at 10-13, *available at* https://apps.nlrb.gov/link/document.aspx/09031d4583a317d5; Consortium Post-Hr'g Br. to Regional Director, 31-RC-312064, at 43-55 (arguing whether the Consortium is an educational institution), *available at* https://apps.nlrb.gov/link/document.aspx/09031d4583a31a5e.

[37] Section 2(14) of the Act defines "healthcare institution" broadly to include "any hospital, convalescent hospital, health maintenance organization, health clinic, nursing home, extended care facility, or other institution devoted to the care of sick, infirm, or aged person." 29 U.S.C. § 152(14).

[38] *See Catholic Bishop*, 440 U.S. at 506 (noting legislative history discussing employees of religious hospitals who objected to union membership, resulting in a statutory accommodation). Congress specifically rejected contemporaneous proposals to exempt religious health care institutions from the NLRA's coverage. *See Mid Am. Health Servs.*, 247 NLRB 752, 753 (1980) (discussing legislative history).

[39] Mot. at 2-3.

12

'care of the sick.'"[40] Indeed, in its district court complaint, the Consortium

describes itself as "part of" Loma Linda University Health,[41] whose stated purpose

is "operat[ing] a regional network providing competent and compassionate

healthcare."[42]

     These numerous threshold disputes, animated by colorable arguments,

preclude the Consortium from making a "strong and clear" showing of a

constitutional violation here. All three "step-zero" questions described above are

fact-bound and require a careful application of those facts to the statute's text and

design. As such, they are within the Board's exclusive statutory authority to decide

in the first instance.[43]

---

[40] Union Post-Hr'g Br. to Regional Director, 31-RC-312064, at 11, *available at* https://apps.nlrb.gov/link/document.aspx/09031d4583a317d5.

[41] Doc. 1, ¶ 2.

[42] Union Post-Hr'g Br. to Regional Director, 31-RC-312064, at 11, *available at* https://apps.nlrb.gov/link/document.aspx/09031d4583a317d5 (quoting Consortium Exhibits 21 and 34).

[43] To invoke *Kyne* jurisdiction, a case may not "simply involve a dispute over statutory interpretation." *Am. Airlines, Inc. v. Herman*, 176 F.3d 283, 293 (5th Cir. 1999); *see also Physicians Nat'l House Staff Ass'n v. Fanning*, 642 F.2d 492, 496 (D.C. Cir. 1980) (en banc) ("[A]n erroneous or arbitrary exertion of . . . authority" or "an error of fact or law is insufficient" under *Kyne*); *see also Int'l Bhd. of Teamsters v. Bhd. of Ry., Airline & S.S. Clerks*, 402 F.2d 196, 205 (D.C. Cir. 1968) (explaining that in *Kyne* cases, "the error on the merits . . . [must be] as obvious on the face of the papers as the violation of specific statutory [or constitutional] language").

But even if the holding in *Catholic Bishop* applied here, a doctrine based on constitutional avoidance cannot supply the required "strong and clear" showing of a constitutional violation.[44] The "narrow" constitutional inquiry performed in *Catholic Bishop* must be taken on its own terms.[45] The Court concluded that the Board's assertion of jurisdiction over parochial school teachers would create "a significant risk" of constitutional infringement.[46] The Court explicitly stated that it was *not* deciding the constitutional question and thus created no per se rule of unconstitutionality for the Consortium to rely upon here.[47] The Consortium's effort

---

[44] *See Grutka v. Barbour,* 549 F.2d 5 (7th Cir. 1977) (in parochial school case, *Kyne* jurisdiction is unavailable where the action "does not seek review of agency action bottomed on the plain wording of a statute which is alleged to be facially unconstitutional").

[45] 440 U.S. at 502.

[46] *Id.* ("[A]t this stage of our consideration we are not compelled to determine whether the entanglement is excessive as we would were we considering the constitutional issue.").

[47] *See id.* Significantly, courts considering state regulation of the labor relations of religious school teachers have found no constitutional violation. *See Catholic High Sch. Ass'n of Archdiocese of N.Y. v. Culvert*, 753 F.2d 1161, 1168 (2d Cir. 1985) ("[T]he duty to bargain does not involve excessive administrative entanglement between church and state."); *S. Jersey Catholic Sch. Teachers Org. v. St. Teresa of the Infant Jesus Church Elem. Sch.*, 696 A.2d 709, 714 (N.J. 1997) (*Catholic Bishop* does not preclude collective-bargaining rights under provision of New Jersey state constitution).

to transform *Catholic Bishop*'s avoidance-principle rationale into something akin to an immunity doctrine therefore fails.[48]

    ii.    The Consortium may obtain meaningful review if and when these proceedings result in a final Board order.

      In addition, the Consortium cannot establish jurisdiction over its complaint because the Supreme Court and this Court have made clear that *Kyne* jurisdiction may attach only where, in its absence, a party would have no "meaningful and adequate means of vindicating [its] rights."[49] Here, the Consortium has pleaded facts showing that it has religious objections to collective bargaining and recognizing labor unions.[50] But it will have no obligation to engage in the conduct it objects to unless and until a final Board order is issued and enforced by a court of appeals. In short, just like the employers in *Catholic Bishop* and its progeny,[51] the Consortium may vindicate its constitutional claims after exhausting its arguments before the NLRB.[52]

---

[48] Notably in the context of *Kyne*, even where a recognized immunity doctrine was asserted, it received a cold reception. *See Goethe House*, 869 F.2d at 80 (Foreign Sovereign Immunities Act did not preclude NLRB proceeding).

[49] *Nat'l Air Traffic Controllers Ass'n*, 437 F.3d at 1258 (citing *MCorp*, 502 U.S. at 43).

[50] Doc. 1, ¶20.

[51] *E.g., Duquesne Univ. of the Holy Spirit,* 947 F.3d at 827; *Univ. of Great Falls*, 278 F.3d at 1339.

[52] This accords with this Court's holding that "the *Kyne* remedy was not devised for the benefit of an employer" because employers may always obtain review by

Analogizing itself to the private parties in *Axon Enterprise, Inc. v. FTC* that asserted structural claims against the exercise of agency authority,[53] the Consortium argues here that administrative exhaustion of its First Amendment arguments before the NLRB would bring about the very harm it seeks to avoid. This argument has two key problems.[54] First, the argument presupposes that the Consortium is exempt from the NLRB's jurisdiction, but as shown, that is very much an open question. Second, the argument fails to appreciate how little the Consortium must do to exhaust and fully preserve its constitutional arguments. Generally, an argument is preserved for court review under the NLRA so long as it is "urged before the Board."[55] The Consortium could therefore choose to limit its

---

committing unfair labor practices such as refusing to bargain. *Mia. Newspaper Printing Pressmen's Union Loc. 46 v. McCulloch*, 322 F.2d 993, 997 (D.C. Cir. 1963).

[53] *Axon Enterprise, Inc. v. FTC*, 215 L. Ed. 2d 151, 159 (2023).

[54] To the extent the Consortium argues that *Axon* supplies a freestanding basis for the exercise of district court jurisdiction here, *Axon*'s reasoning is limited to structural, separation-of-powers claims. 215 L. Ed. 2d at 161, 168-69. It does not encompass the kind of as-applied constitutional challenge advanced by the Consortium. Although the Consortium asserts that the administrative adjudication it challenges is "an illegitimate proceeding, led by an illegitimate decisionmaker," Mot. at 14 (quoting *Axon*, 215 L. Ed. 2d at 166), its claims do not center on whether the NLRB's officeholders properly hold their positions or are improperly shielded from presidential oversight. *See id.* Instead, the Consortium alleges that it falls entirely outside the sweep of the NLRA—the very kind of challenge rejected over eighty years ago in *Myers*, which *Axon* cites with approval. 215 L. Ed. 2d at 167 (citing *Myers*, 303 U.S. at 51).

[55] 29 U.S.C. § 160(e).

16

participation in NLRB proceedings to doing nothing more than arguing that the Board's potential exercise of jurisdiction is inconsistent with *Catholic Bishop* and its progeny.[56] Accordingly, the Consortium possesses "meaningful and adequate means of vindicating [its] rights."[57]

**B. Other factors weigh heavily against an injunction pending appeal.**

As discussed above in Section III(A)(i), the lack of a "strong and clear" constitutional claim dooms the Consortium's likelihood of success on the merits. The remaining injunctive-relief factors are also unavailing for the Consortium.

    i.   The Consortium's motion must be denied because it has failed to show a concrete and imminent harm that an injunction could remedy.

The Consortium has failed to show a likelihood of imminent or certain irreparable harm. To establish irreparable harm in the D.C. Circuit, the moving party must prove that its injury is "both certain and great; . . . actual and not theoretical."[58] The movant must also "show that the injury complained of [is] of such *imminence* that there is a clear and present need for equitable relief to prevent

---

[56] To be sure, such a choice would be risky because the Consortium might forfeit any other merits arguments or defenses that the Consortium may have in the administrative case. But the Consortium assures this Court that the Board lacks jurisdiction over its labor relations, so perhaps the risk is not all that great.

[57] *Nat'l Air Traffic Controllers Ass'n*, 437 F.3d at 1258.

[58] *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) (cleaned up).

irreparable harm."[59] At a minimum, the Consortium must "demonstrate that irreparable injury is *likely* in the absence of an injunction," not just a possibility.[60]

Here, the Consortium's irreparable-harm claim is based primarily on its assertion that it is presently suffering irremediable injury to its First Amendment rights by virtue of the Board's administrative proceedings.[61] However, "the finding of irreparable injury cannot meaningfully be rested on a mere contention of a litigant, but depends on an appraisal of the validity, or at least the probable validity, of the legal premise underlying the claim of right in jeopardy of impairment."[62] Here, as discussed above in Section III(A)(i), the legal premise underlying the Consortium's First Amendment claim is entirely contingent on the status of both the Consortium and its residents and fellows under *Catholic Bishop*. Because the Union has presented colorable reasons to believe that the Consortium is not exempt from the NLRA,[63] the Consortium's claim of irreparable injury necessarily falls short of satisfying the "certain and great" harm standard established by this Court's precedents.

---

[59] *Id.* (cleaned up).

[60] *Winter*, 555 U.S. at 22.

[61] Mot. at 21.

[62] *Wagner v. Taylo*r, 836 F.2d 566, 576 n.76 (D.C. Cir. 1987) (cleaned up).

[63] Union Post-Hr'g Br. to Regional Director, 31-RC-312064, at 10-24, *available at* https://apps.nlrb.gov/link/document.aspx/09031d4583a317d5.

Moreover, to the extent the Consortium defines its injury as having been subjected to a "process of inquiry" that may impinge on First Amendment rights under *Catholic Bishop*, that alleged harm cannot be remedied by enjoining the representation case because that case's evidentiary hearing has already concluded. Indeed, that hearing had already concluded by the time of the district court's decision denying the Consortium's preliminary-injunction motion and dismissing the case for lack of jurisdiction. Because the evidentiary hearing has closed and there are no additional hearings on the horizon, any harms arising from the "process of inquiry" cannot now support issuance of an injunction pending appeal.

Finally, the Consortium's alleged injury lacks the certainty required to show irreparable harm, as evidenced by the fact that neither the Regional Director nor the Board has decided whether the NLRB has jurisdiction over the Consortium. The same jurisdictional questions that the Consortium asks this Court to consider are presently under consideration by the Regional Director. It is entirely possible that the Regional Director—or the Board on review—will adopt the Consortium's legal arguments and dismiss all pending administrative cases involving the Consortium on that basis. Thus, the Consortium's alleged harm (i.e., suffering the Board's exercise of jurisdiction) is merely theoretical, presenting no clear and present need for extraordinary relief.

19

ii.   The balance of equities and public interest strongly weigh against the injunctive relief requested.

The Court should consider the equities presented in light of the practical reality that an injunction would extinguish the ability of over 800 residents and fellows (who are not before this Court) to exercise their right to self-organization in the bargaining unit as presently constituted. The Consortium's residents and fellows, as well as the Union, invested significant time and effort to organize a bargaining unit and petitioned for an election when they believed there was sufficient support to win that election. An injunction prohibiting further action in the representation case—even if later vacated after full merits briefing—would significantly delay any election and would threaten to "frustrate employees' bargaining rights before the employees had an opportunity to exercise them."[64] This is particularly true here, where as noted above (at 3-4), significant turnover amongst the Consortium's residents and fellows will occur on June 30, 2023.

In addition, the timing of the Consortium's request raises serious questions regarding whether the relief it seeks would address the injury it alleges. The

---

[64] *Gold Coast Rest. Corp. v. NLRB*, 995 F.2d 257, 267 (D.C. Cir. 1993). Recognizing that Congress designed the NLRA "to prevent delay in certification and to expedite the settlement of labor disputes," this Court has previously done the exact opposite of what the Consortium seeks here by staying a district court order enjoining a Board election. *See Libbey-Owens-Ford*, 403 F.2d at 917. This Court ultimately reversed the district court's judgment for lack of jurisdiction. *See id.*

20

Consortium argues that an injunction will prevent immediate harm to its exercise of religious beliefs.[65] But despite characterizing this harm as an emergency warranting immediate and extraordinary injunctive relief, this alleged harm was just as present the day the District Court issued its judgment on April 11. The Consortium does not explain why it waited sixteen days to notice its appeal, or why it waited for the calendar to flip from April to May to request injunctive relief from this Court. This suggests that the true "emergency" the Consortium is seeking to avert is the possibility of its residents and fellows having the opportunity to freely express their preference for union representation in a secret-ballot election. To the extent the Consortium has strategically timed its request for relief to yank away a chance for an election just as Union support has reached a critical mass, it has acted inequitably.

Furthermore, there are other implications the Court must consider. This includes potential disruption to the residents and fellows, and the surrounding community and local governments, if this Court displaces the carefully balanced scheme created by Congress for peacefully resolving labor-representation disputes, especially in the healthcare context.[66] Finally, the right of residents and fellows to

---

[65] Mot. at 1-2, 21-22.

[66] The Board has noted the dangers of largely unregulated self-help activities, such as strikes and picketing, that pervaded healthcare representation disputes in

21

self-organization has constitutional dimensions and should not be lightly set aside by this Court on the thin reed offered by the Consortium's arguments.[67]

## IV.    CONCLUSION

Because its complaint suffers from fatal jurisdictional defects, the Consortium has no likelihood of success on the merits. In addition, the Consortium's dubious claims of irreparable harm do not outweigh the demonstrable harm that an injunction would inflict upon others. Therefore, the Emergency Motion for Injunction Pending Appeal should be denied.

As for the Consortium's request for expedited briefing, the Board leaves that request to this Court's discretion.

---

absence of NLRA jurisdiction. *Boston Med. Ctr. Corp.*, 330 NLRB 152, 163 (1999).

[67] *See Ukiah Adventist Hosp.*, 332 NLRB 602 (2000) ("The right of employees to self-organization is constitutionally protected; it is a fundamental right implicit in the First Amendment's free assembly language." (citing *Shelton v. Tucker*, 364 U.S. 479, 485-87 (1960), and *Thomas v. Collins*, 323 U.S. 516, 532 (1945))).

22

Respectfully submitted,

DAWN L. GOLDSTEIN
*Acting Deputy Associate General Counsel*

KEVIN P. FLANAGAN
*Supervisory Attorney*

/s/ Tyler Wiese
TYLER JAMES WIESE
*Trial Attorney*
Bar No. 0392601 (MN)
tyler.wiese@nlrb.gov
Tel: (952) 703-2891

DAVID BOEHM
*Trial Attorney*

AARON SAMSEL
*Trial Attorney*

ANDREW ZIAJA
*Trial Attorney*

National Labor Relations Board
Contempt, Compliance & Special Litigation
Branch
1015 Half Street, S.E. - 4th Floor
Washington, DC 20003

Dated: May 9, 2023

**<u>CERTIFICATE OF SERVICE</u>**

I certify that on May 9, 2023, a true copy of the NLRB's Opposition to

Appellant's Emergency Motion for Injunction Pending Appeal was filed via this

Court's CM/ECF electronic filing system. I certify that all participants in this case

are registered CM/ECF users and will be served by the CM/ECF system.

*/s/ Tyler Wiese*
Tyler Wiese

May 9, 2023

## <u>CERTIFICATE OF COMPLIANCE</u>

This opposition complies with the requirements of Fed. R. App. P. 27(d) and

Circuit Rule 27(d)(2)(A) because it has 5,139 words.

This opposition also complies with the typeface requirements of F. R. App.

P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this

motion has been prepared in a proportionally spaced typeface using Microsoft

Word in 14-point Times New Roman Font.

*/s/ Tyler Wiese*
Tyler Wiese

May 9, 2023

## **CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES**

Pursuant to Circuit Rule 27(a)(4) and 28(a)(1)(A), the below counsel of record certifies as follows:

### **A. PARTIES**

All parties, intervenors, and amici appearing before the district court and in this Court are listed in the Consortium's Emergency Motion for Injunctive Relief.

### **B. RULINGS UNDER REVIEW**

The Consortium seeks review of the District Court's April 11, 2023 final judgment entered by the Honorable Colleen Kollar-Kotelly. A copy of this ruling can be found in the addendum to the Consortium's Emergency Motion.

### **C. RELATED CASES**

The case on review was not previously before this Court or any other court other than the District Court for the District of Columbia which entered the judgment from which the Consortium appeals.  There are no other related cases.


*/s/ Tyler Wiese*
Tyler Wiese

May 9, 2023