# United States Court of Appeals

## FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____

**No. 23-5096**                                      **September Term, 2022**

**1:23-cv-00688-CKK**

**Filed On:** May 25, 2023

Loma Linda-Inland Consortium for Healthcare
Education, doing business as Loma Linda
University Self-Education Consortium,

>              Appellant

> v.

National Labor Relations Board,

>              Appellee

**BEFORE:**     Millett, Pillard, and Rao*, Circuit Judges

## O R D E R

Upon consideration of the emergency motion for injunction pending appeal and to expedite appeal, the opposition thereto, and the reply, it is

**ORDERED** that the motion for injunction pending appeal and to expedite appeal be denied.

Loma Linda—Inland Empire Consortium for Healthcare Education, which does business as Loma Linda University Health Education Consortium (together, "Loma Linda Health"), seeks to enjoin the early stages of a proceeding before the National Labor Relations Board considering whether Loma Linda Health's medical residents and fellows should be allowed to vote on whether to be represented by a union.   The district court found that it did not have subject matter jurisdiction because the limited exception for non-final Board orders under _Leedom v. Kyne_, 358 U.S. 184 (1958), did not apply. Loma Linda Health appealed, and filed emergency motions for an injunction pending appeal and an expedited appeal.

* A statement by Circuit Judge Rao, dissenting from the denial of the emergency motion for injunction pending appeal, is attached.

**No. 23-5096**                                          **September Term, 2022**

Loma Linda Health has not met its high burden of showing entitlement to an emergency injunction pending appeal.   Loma Linda Health argues that the district court should have entertained its case because it is a religious educational institution, and the Board is violating its constitutional rights by making the necessary factfinding to determine if Board jurisdiction exists over the medical residents and fellows it employs. Loma Linda Health relies on precedent holding that the Board lacks statutory jurisdiction over teaching faculty that offer instruction within a religious school.

But this is a highly unusual case factually and legally.   While Loma Linda Health may be a religious educational institution, the medical residents and fellows it employs are neither required nor expected to be religiously affiliated.   They are there to learn how to practice medicine, and only occasionally teach.   When they do teach, their instruction is of other medical personnel and staff (who may or may not be affiliated with Loma Linda Health).   And any such peer-to-peer instruction occurs not within Loma Linda Health, but on the premises of roughly 60 distinct healthcare institutions, many of which are secular or affiliated with different religious denominations.   So the residents and fellows bear little resemblance to the faculty instructing students inside religious schools that the Supreme Court and this court have held fall beyond the Board's jurisdiction.   Loma Linda Health points to no First Amendment case law, and we have found none, addressing whether the Constitution precludes an exercise of Board authority in this unique context.   Because Loma Linda Health raises a novel First Amendment claim that rests on complicated factual determinations, it has not demonstrated the type of clear and mandatory constitutional prohibition that is needed to establish district court jurisdiction in this case.

**I**

**A**

Loma Linda Health is a religious non-profit corporation that is affiliated with the Seventh-day Adventist Church.   Loma Linda Health Emerg. Mot. for Inj. Pending Appeal at 2; Decl. of Dr. Dan Giang ¶ 4, *Loma Linda—Inland Empire Consortium for Healthcare Educ. v. NLRB*, No. 23-0688 (D.D.C. March 21, 2023), Dkt. 6-2.   It operates within the Loma Linda University Health system, which is "an academic medical center[.]"   Giang Decl. ¶ 5.

Loma Linda Health holds itself out as a religious institution, Loma Linda Health Mot. at 2, and its religious character is uncontested in this case, *see* Board Opp. at 11–13.   As relevant here, Loma Linda Health sponsors approximately 70 medical residency programs involving more than 800 residents and medical fellows.   Compl. at 2–3 ¶ 2, *Loma Linda Health*, No. 23-0688 (D.D.C. March 14, 2023), Dkt. 1.   Loma

**No. 23-5096**                    **September Term, 2022**

Linda Health seeks to train doctors consistently with the "healing ministries of Jesus Christ and the Church."   Loma Linda Health Mot. at 2; *see* Giang Decl. ¶ 6 (fellows and residents are "encouraged to conduct themselves in accordance with the Church's teachings").   Loma Linda Health's articles of incorporation also provide that one of its "specific purposes" is "[s]erving the healthcare needs of underserved patient populations[,]" including "in the present through healthcare services[.]"   Giang Decl., Ex. B at 1, 4.

Loma Linda Health does not require that any of its residents or fellows be members of the Seventh-day Adventist Church or practice any religion.   Stipulations ¶¶ 22, 26, *Loma Linda Health*, No. 23-0688 (D.D.C. April 3, 2023), Dkt. 20-9.   While Loma Linda Health serves as the employer of the residents and fellows, it does not itself provide a hospital or clinic in which residents and fellows work.   Instead, the residents and fellows work at more than 60 affiliated healthcare institutions both within and outside the Loma Linda University Health system.   Some of those are Seventh-day Adventist healthcare institutions.   Many more are secular entities or associated with different religious denominations.   Statement P. & A. Supp. Mot. Prelim. Inj. at 2, *Loma Linda Health*, No. 23-0688 (D.D.C. March 21, 2013), Dkt. 6-1; Giang Decl. ¶ 6; Stipulations ¶¶ 5, 14; Decision and Direction of Election at 5, *Loma Linda Inland Empire Consortium for Healthcare Educ. d/b/a Loma Linda Univ. Health Educ. Consortium v. Union of American Physicians & Dentists,* NLRB No. 31-RC-312064 (May 16, 2023) ("Reg. Dir. Decision"); *Training Sites*, Loma Linda Univ. Health, https://lluh.org/health-professionals/gme/prospective-residents/training-sites (last visited May 24, 2023).

While the time allocations can vary, the parties agree that most Loma Linda residency and fellowship programs have their residents and fellows spend less than half their time working at healthcare institutions that are part of the Loma Linda Health system, and that in a majority of its programs, residents and fellows spend less than a third of their time working within Loma Linda healthcare institutions.   Stipulations ¶¶ 5, 14.

One of the beliefs of the Seventh-day Adventist Church is that "Seventh-day Adventist institutions are following the historic teaching of the Church when they refuse to recognize labor unions as bargaining units or to enter into contractual negotiations with them or similar organizations."   Reg. Dir. Decision at 11 (quoting Working Policy of the General Conference of Seventh-day Adventists at 6, *Loma Linda Health*, No. 23-0688 (D.D.C. March 21, 2013), Dkt. 6-12).   While individual members of the Church may choose to participate in labor unions, church members "are following the historic teaching of the Church when they refuse to join or financially support labor unions or similar organizations[,]" *id.* (quoting Working Policy of the General Conference of Seventh-day Adventists at 6).

No. 23-5096                                              September Term, 2022

### B

In February 2023, a local chapter of the Union of American Physicians and Dentists, American Federation of State, County, and Municipal Employees, AFL-CIO ("Union") filed a petition with the National Labor Relations Board seeking to represent the medical residents and fellows who are employed by Loma Linda Health, but who perform all of their work in roughly 60 distinct healthcare institutions.   Board Docket at 1, *Loma Linda Health*, No. 23-0688 (D.D.C. March 21, 2023), Dkt. 6-9.

In response, the Board initiated an administrative process to determine if a "question of representation" exists and, if it does, to conduct a representation election. 29 U.S.C. § 153(b).   If an election were held and the Union were to lose, the Board would issue a certification of results.   If the Union were to prevail, the Board would issue a certification of representative.   *See* 29 C.F.R. § 102.69(h).   To dispute the legality of a representative certification, an employer can challenge the Board's decision "by refusing to bargain with the union and then raising its election objection in the ensuing unfair labor practice proceedings."   *Canadian American Oil Co. v. NLRB*, 82 F.3d 469, 471 n.1 (D.C. Cir. 1996) (citing *Boire v. Greyhound Corp.*, 376 U.S. 473, 476–477 (1964); *Amalgamated Clothing & Textile Workers v. NLRB*, 736 F.2d 1559, 1561–1562 (D.C. Cir. 1984)).

After receiving the Union's petition, the Board's Regional Director scheduled a representation hearing.   The function of a representation hearing is to enable to the Regional Director to discern whether the group of employees the petition identifies would, if they voted for a union, be an appropriate unit for collective bargaining that is within the Board's jurisdiction and, if so, to direct an election.   Loma Linda Health asked the Regional Director to bifurcate the proceedings and first rule on its argument that the Board lacked statutory jurisdiction because it is a religious educational institution.   That procedural request was denied.   The representation hearing, in which Loma Linda Health actively participated, was held from March 13 to April 5, 2023.   *See* Board Opp. at 3; Excerpt from Hearing Transcript, *Loma Linda Health*, No. 23-0688 (D.D.C. March 31, 2023), Dkt. 19-3 (noting Loma Linda Health's introduction of exhibits and direct examination of a witness).

After the representation hearing started, Loma Linda Health filed a lawsuit in the United States District Court for the District of Columbia seeking to enjoin the Board from deciding either its jurisdiction or the question of representation because the Board had no statutory jurisdiction and exercising that jurisdiction would violate the First Amendment and the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb *et seq*. *See* Compl. at 1 ¶ 1, 7–8; Statement P. & A. Supp. Mot. Prelim. Inj. at 1, 11–14.   The

No. 23-5096                                        September Term, 2022

Regional Director completed the representation hearing while the preliminary injunction motion was pending before the district court.

The district court subsequently denied Loma Linda Health's request for an injunction and dismissed the case for lack of subject matter jurisdiction.  The court reasoned that the exception in *Leedom v. Kyne*, 358 U.S. 184 (1958), to the general bar on district court review of Board representation proceedings was not satisfied, *see id.* at 188.  Specifically, the court ruled that the second prong of the exception was not met because Loma Linda Health could vindicate its objection to Board jurisdiction through the established process for judicial review in federal appellate courts of final Board orders.  *Loma Linda—Inland Empire Consortium for Healthcare Educ. v. NLRB*, No. 23-0688, 2023 WL 2894348, at *2–3 (D.D.C. April 11, 2023); *see* 29 U.S.C. § 160(e), (f).

Loma Linda Health appealed the district court's jurisdictional decision and has filed an emergency motion for an injunction pending appeal and to expedite its appeal.

**C**

On May 16, 2023, while the appeal and motion for emergency injunctive relief were pending in this court, the Regional Director issued a decision finding it appropriate for the Board to exercise jurisdiction over Loma Linda Health and directing a representation election.  Before that happens, Loma Linda Health may seek review of the Regional Director's decision before the Board and a stay of that decision.  *See* 29 C.F.R. § 102.67(c).  Thus far, Loma Linda Health has not chosen to do so.

As relevant here, the Regional Director determined that Loma Linda Health "has characteristics of both a healthcare institution and an educational institution[,]" but that it is ultimately "more closely aligned with an educational institution[.]"  Reg. Dir. Decision at 18.  That finding, though, was insufficient on its own to exempt Loma Linda Health from the Board's statutory jurisdiction, in the Regional Director's view.  Applying *Saint Xavier University*, 365 NLRB No. 54 (2017), the Regional Director explained that the Board will "assert jurisdiction over the nonteaching employees of religious institutions or nonprofit religious organizations unless their actual duties require them to perform a specific role in fulfilling the religious mission of the institution[,]" slip op. at 1.  Reg. Dir. Decision at 19.  Loma Linda Health did not challenge the Board's *Saint Xavier* decision in its post-hearing briefs before the Regional Director or its briefs in this court.  Nor has it argued that it is exempt from Board jurisdiction even if the residents and fellows are found not to be teachers.

No. 23-5096                                        September Term, 2022

Reviewing the evidence in the record, the Regional Director found that the residents and fellows were nonteaching, nonfaculty employees, and that their actual duties did not require them to perform a specific role in carrying out Loma Linda Health's religious mission.   Instead, on the record before her, the Regional Director found it to be "clear that residents' and fellows' primary duty is to perform patient care." Reg. Dir. Decision at 18; *id.* at 5 ("The primary duty of residents and fellows at [Loma Linda Health], regardless of their specialty, rotation, or location, is to practice medicine.").

The Regional Director found that the guidance that residents and fellows occasionally provide to less experienced colleagues was a   "relatively limited training function" that generally occupies only 5% to 10% of a resident's time.   Reg. Dir. Decision at 7, 18.   The Regional Director pointed to evidence about the residents' job description, the duties of residents and fellows in practice, the purpose of a residency or fellowship program to medically train residents and fellows, and the minimal amount of time residents and fellows spent advising co-employees.   The Regional Director concluded that all of that evidence is inconsistent with viewing the residents and fellows as faculty of a religious educational institution, and so ruled that they "are not faculty and should instead be viewed as nonteaching employees" of Loma Linda Health.   *Id.* at 18.

In so holding, the Regional Director acknowledged that residents and fellows undisputedly "engage in some teaching" because part of their own training requires them to "serve as a role model for more junior residents and medical students[,]" "explain[] a procedure, observ[e] as a junior resident performs all or part of a procedure, provid[e] feedback on rounds, model[] professionalism, [and] answer[] questions."   Reg. Dir. Decision at 6–7, 18; *id.* at 7 (Teaching provides "the opportunity for the senior residents and fellows to deepen their own knowledge and understanding of the necessary principles and techniques by teaching them to others[,]" and gives them "the skills to teach and train when they eventually become licensed physicians[.]").   But the Regional Director added that "the primary purpose of residency and fellowship programs is to provide the residents and fellows with training so that they may gain the experience needed to become fully licensed physicians," which is "inconsistent with the concept of the residents and fellows themselves being teaching faculty."   *Id.* at 18.

The Regional Director then considered whether residents' and fellows' "actual duties require them to perform a specific role in fulfilling the religious mission" of Loma Linda Health.   Reg. Dir. Decision at 19.   The Regional Director found that they do not. Residents and fellows are not subject to any religious requirements, either personally or as part of their jobs.   Several residents and fellows testified that, "while they are trained

No. 23-5096                           September Term, 2022

to consider a patient's spiritual beliefs[,]" they are not required "to espouse any particular belief or engage in any specific religious action." *Id.*

Based on those findings, the Regional Director exercised jurisdiction over Loma Linda Health and its residents and fellows by ordering a representation election. *See* Reg. Dir. Decision at 19; *id.* at 27–28.

## II

In determining whether to issue an injunction pending appeal, we consider (1) whether the movant has shown a substantial likelihood of success on the merits; (2) "the prospect of irreparable injury to the moving party if relief is withheld"; (3) "the possibility of harm to other parties if relief is granted"; and (4) the public interest. D.C. CIR. R. 8(a)(1); *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 746 (D.C. Cir. 1995). The final two factors merge where, as here, the party opposing injunctive relief is the government. *See Nken v. Holder*, 556 U.S. 418, 435 (2009) (discussing the same factors in the context of a stay). On this record, Loma Linda Health has not shown that any of those factors entitles it to an injunction pending appeal on the narrow question of whether the district court properly declined jurisdiction.

## A

At this stage, Loma Linda Health has not shown a likelihood of success on the merits of its claim that the district court can exercise *Leedom* jurisdiction over its action.

District courts do not ordinarily have jurisdiction to review orders in union certification proceedings because they are not final orders of the Board, and Congress has directed review of final Board orders to the courts of appeals. *See, e.g.*, *Boire*, 376 U.S. at 476–477; *American Fed. of Labor v. NLRB*, 308 U.S. 401, 409 (1940); 29 U.S.C. § 160(f).

The parties agree that for the district court to take the exceptional step of exercising subject matter jurisdiction, Loma Linda Health must meet *Leedom*'s strict jurisdictional standard. *See* Loma Linda Health Mot. at 5; Board Opp. at 8. Loma Linda Health therefore "must show, *first*, that the agency has acted 'in excess of its delegated powers and contrary to a specific prohibition' which 'is clear and mandatory,' and, *second*, that barring review by the district court 'would wholly deprive [the party] of a meaningful and adequate means of vindicating'" its rights. *National Air Traffic Controllers Ass'n AFL-CIO v. Federal Serv. Impasses Panel*, 437 F.3d 1256, 1263 (D.C. Cir. 2006) (quoting *Leedom*, 358 U.S. at 188; and then quoting *Board of Governors of*

**No. 23-5096**                                      **September Term, 2022**

*the Fed. Reserve Sys. v. MCorp Fin., Inc.*, 502 U.S. 32, 43 (1991)) (alteration in *National Air Traffic Controllers Ass'n*).[1]

So Loma Linda Health's task at this juncture is to demonstrate a substantial likelihood of showing that the Regional Director has obviously exceeded a clear, specific, and mandatory constitutional limitation on its jurisdiction that is irremediable upon later review of a refusal to bargain if the Union is elected.   Loma Linda Health argues that it meets those requirements because the Board's exercise of jurisdiction over it violates the First Amendment, and because merely participating in Board proceedings infringes its free exercise of religion.   Neither argument succeeds at this time.

**1**

With respect to *Leedom*'s first prong, Loma Linda Health fails to establish that the current proceeding clearly violates a specific First Amendment mandate.   Loma Linda Health rests its claim on *NLRB v. Catholic Bishop of Chicago*, 440 U.S. 490 (1979), which held that the Board lacked jurisdiction over matters involving teaching faculty in religious high schools, *id.* at 507.   For three reasons, that argument fails.

*First*, *Catholic Bishop* is a case of statutory interpretation, not a constitutional ruling.   440 U.S. at 507.   Employing constitutional avoidance, the Supreme Court concluded that, as a matter of statutory construction, the National Labor Relations Act excludes "teachers in church-operated schools" from the Board's jurisdiction.   *Id.* Based on *Catholic Bishop*, we have since held that the Board lacks the statutory authority to exercise jurisdiction over both full-time faculty members and adjunct professors at religious universities or colleges.   *Carroll College v. NLRB*, 558 F.3d 568, 572–574 (D.C. Cir. 2009); *Duquesne Univ. of the Holy Spirit v. NLRB*, 947 F.3d 824, 832–833 (D.C. Cir. 2020); *see also University of Great Falls v. NLRB*, 278 F.3d 1335, 1347 (D.C. Cir. 2002).

Given that *Catholic Bishop* and our precedent all involve matters of statutory construction, Loma Linda Health has not demonstrated that a clear and specific First Amendment violation has occurred or will occur.   Indeed, it cites no controlling constitutional holdings from the Supreme Court or this court.

---

[1] While the dissenting opinion reasons that the Supreme Court has abrogated *Leedom*'s requirements, Dissenting Op. at 5, not even Loma Linda Health has made that argument. Instead, Loma Linda Health has focused its briefing on meeting the extant *Leedom* test. *See* Loma Linda Health Mot. at 5–7.

**No. 23-5096**                                          **September Term, 2022**

To be sure, *Catholic Bishop* relied upon constitutional avoidance principles in concluding that the National Labor Relations Act does not grant the Board jurisdiction over religious educational institutions.   440 U.S. at 507.   But for purposes of the purely constitutional question that Loma Linda Health has chosen to press here, *Catholic Bishop* long pre-dated the Supreme Court's decision in *Employment Division v. Smith*, 494 U.S. 872 (1990), which held that the First Amendment itself does not mandate the exception of religious entities from neutral laws of general applicability, *id.* at 878–879. *See Geary v. Visitation of Blessed Virgin Mary Par. Sch.*, 7 F.3d 324, 327 (3d Cir. 1993) (noting that, "[s]ince *Catholic Bishop*, the Court has indicated that religious institutions are subject to some regulation" and citing, among other cases, *Employment Division v. Smith*); *American Friends Serv. Cmte. Corp. v. Thornburgh*, 951 F.2d 957, 959–960 (9th Cir. 1991) (rejecting claim that organization should be exempted from the Immigration Reform and Control Act under *Catholic Bishop*, as well as a claim that application of the Act violated the Free Exercise Clause under *Employment Division v. Smith*).

Yet Loma Linda Health has not provided this court with any constitutional argument grounded in First Amendment precedent demonstrating that, under *Smith* or other First Amendment precedent, the First Amendment's Free Exercise Clause compels its wholesale exclusion from any and all National Labor Relations Board proceedings.   Loma Linda Health instead has relied solely on *Catholic Bishop* and its ensuing *statutory* precedent in this court.[2]

*Second*, even if Loma Linda Health had cast its claim in statutory rather than constitutional terms, nothing clearly and specifically provides Loma Linda Health with the get-out-of-the-Board-immediately card that it seeks.

To start, Loma Linda Health has to demonstrate that jurisdiction existed at the time it filed its complaint.   *See Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 570 (2004) ("It has long been the case that 'the jurisdiction of the court depends upon the state of things at the time of the action brought.'") (quoting *Mollan v. Torrance*, 22 U.S. (9 Wheat.) 537, 539 (1824)); *American Hosp. Ass'n v. Azar*, 895 F.3d 822, 827 (D.C. Cir. 2018) (holding that failure to meet presentment requirement could not be cured during the pendency of the appeal because the attempts "come too late to establish subject-matter jurisdiction in the district court") (citing *Grupo Dataflux*, 541 U.S. at 570).

---

[2] Loma Linda Health raised a claim under the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb *et seq.*, in district court, but does not press that claim here as a basis for emergency relief or to establish the district court's jurisdiction.

**No. 23-5096**                                             **September Term, 2022**

At the time Loma Linda Health filed suit and requested an injunction, the Regional Director had not yet decided whether the Board could or would find that it had authority to act on the Union's petition under *Catholic Bishop*.   Whether the Board should or should not allow the Union to pursue representation of the residents and fellows employed by Loma Linda Health was the very question before the Regional Director.   And while the dissenting opinion tries to portray the Board as refusing to follow precedent (pointing to a *different* case), Dissenting Op. at 9, the very cases that Loma Linda Health and the dissenting opinion cite as controlling set out a jurisdictional test *for the Board* to apply in the first instance.   *See Great Falls*, 278 F.3d at 1347–1348 (setting forth the test for the Board to apply to determine when an educational institution falls within *Catholic Bishop*'s statutory exclusion for religious education and then to decline jurisdiction if it is met); *Duquesne University*, 947 F.3d at 831; *Carroll College*, 558 F.3d at 572; *see also Catholic Bishop*, 440 U.S. at 507.   Neither in *Catholic Bishop* nor in any of our ensuing cases—*Great Falls*, *Carroll College*, or *Duquesne University*—did the court hold that those educational institutions could enjoin the Board from making the necessary factual findings to determine its jurisdiction consistent with *Catholic Bishop* in the first instance, or from simply conducting an election if it found jurisdiction.   *See Great Falls*, 278 F.3d at 1338–1339; *Carroll College*, 558 F.3d at 570–571; *Duquesne Univ.*, 947 F.3d at 827.

In short, all of the governing precedent directs the Board (by way of the Regional Director) to make the necessary factual findings and decide in the first instance whether it has jurisdiction over Loma Linda Health in light of *Catholic Bishop*.   All of those cases came to court on an employer's petition asserting it had no obligation to bargain, and the Board's cross-petition to enforce its bargaining order.

Nowhere in its briefing here does Loma Linda Health argue why the First Amendment or the National Labor Relations Act foreclosed the Board from just applying *Catholic Bishop*, *Great Falls*, *Carroll College*, and *Duquesne University* to the facts of record and making a judgment about that precedent's applicability.   It cites no case in which the Supreme Court, this court, or any court exercised *Leedom* jurisdiction before the Board even decided it had jurisdiction and made the necessary factual findings for such a judgment.   Yet that is the hurdle Loma Linda had to overcome to establish the district court's jurisdiction under *Leedom* at the time it filed its complaint, not to mention at the time it filed its notice of appeal.

That jurisdictional picture had not changed at the time the district court ruled or at the time Loma Linda Health filed its notice of appeal and requested emergency injunctive relief in this court.   In the absence of any argument or any precedent establishing *Leedom* jurisdiction or applying *Catholic Bishop* at the first moment a union files a petition with the Board, we cannot find any error by the Board that existed at the

**No. 23-5096**                                    **September Term, 2022**

time the complaint was filed, let alone the type of clear and mandatory error necessary for *Leedom* jurisdiction.

While the case was pending here, the Regional Director ruled that it did have jurisdiction and ordered an election.   That recent development, of course, says nothing about the district court's jurisdiction at the time the complaint was filed (or even ours at the time of the notice of appeal).

Anyhow, Loma Linda Health has not argued in this proceeding that the Board's mere ordering of an election—an election that the Board will conduct (not Loma Linda Health), and which the Union could lose—infringes its free exercise of religion.   True, Loma Linda Health's complaint alleges that "**[i]f** the Church were to be ordered by the Board to recognize and bargain with the Union," then "it would be forced under the threat of civil sanction to act contrary to its longstanding and well-established religious teachings regarding labor organizations."   Compl. at 7 ¶ 38 (emphasis added).   But that puts the cart far in front of the horse.   No election has yet been held; no union has been certified; and no Board order mandating bargaining has issued.

Because Loma Linda Health might never be obligated to recognize or collectively bargain with the Union or to participate in any future proceedings involving the type of religious probing it fears, *see* Compl. at 7 ¶ 38, it has not at this stage stated a clear, specific, and mandatory First Amendment or statutory claim supporting emergency injunctive relief through the rare exercise of *Leedom* jurisdiction.[3]

*Third*, while the Regional Director found that Loma Linda Health was best characterized as a religious educational institution, the Director also found that its medical residents and fellows do not serve as teaching faculty within a religious educational institution, distinguishing this case from *Catholic Bishop* and this court's follow-on decisions.   Loma Linda Health has not presented evidence to the contrary here.   Before this court, Loma Linda Health at no point characterizes its residents and

---

[3]  For the same reasons, Loma Linda Health has not shown that it had already been deprived of a clear First Amendment right at the time it filed its complaint or when the district court ruled, which the dissenting opinion suggests would independently entitle it to review.   *See* Dissenting Op. at 3 (citing *Miami Newspaper Printing Pressman's Union Local 46 v. McCulloch*, 322 F.2d 993, 996 (D.C. Cir. 1963)).   While Loma Linda Health certainly desires to avoid any exercise of Board jurisdiction, it has not yet identified any particular action that had occurred at the relevant times (or since) that conflicts with its religious obligation to avoid collective bargaining.   *See Miami Newspaper Printing Pressman's Union Local 46*, 322 F.2d at 996.   And, again, none of the precedent it cites finds *constitutional* violations by the Board, rather than statutory oversteps.

**No. 23-5096**                              **September Term, 2022**

fellows as faculty members.   *See* Loma Linda Health Mot. at 10; Loma Linda Health
Reply at 6–7 (arguing that *Catholic Bishop*'s "reach is broader than university faculty").
Instead, Loma Linda Health described the residents and fellows to the Regional Director
as "students[,]" Reg. Dir. Decision at 15, and the guidance they occasionally provide as
an aspect of those residents' and fellows' own learning and training process, *see id.* at
6–7, 18.

Yet, because the only issue in this appeal is whether the district court erred in
failing to exercise *Leedom* jurisdiction, Loma Linda Health has the burden of
demonstrating that a clear, specific, and mandatory constitutional command is being
violated (or at least a statutory one, had it argued the case that way).   But it points to
no precedent, and we have found none, holding that the First Amendment or *Catholic
Bishop* precludes such early exercises of Board jurisdiction based on (i) occasional
employee-to-employee teaching (ii) in which neither the teaching nor learning employee
is required or expected to be religiously affiliated, and that (iii) occurs outside and away
from the religious educational institution and (iv) within independent healthcare
premises (the mix of more than 60 secular and religiously affiliated hospitals and clinics
where residents and fellows work), and that also (v) takes up only 5% to 10% of the
residents' and fellows' time, and (vi) where some large proportion of the time that
teaching occurs is within institutions that lack any religious affiliation with the Seventh-
day Adventist Church.   We are aware of no clear, specific, or mandatory basis—or
even any relevant precedent—holding at this early procedural juncture that the
concerns about Board superintendence of religious faculty teaching in religious schools
that underlay *Catholic Bishop* extends to this scenario.   After all, such a reading as the
dissenting opinion proposes (at 7) would seem to encompass every workplace that has
occasional orientation or continuing professional education programs, or employees
involved in any other role modeling or mentoring program for some small fraction of
their work time.[4]

Nor has Loma Linda Health shown that, under *Catholic Bishop*, the National
Labor Relations Act exempts entire institutions, rather than a type of employee teaching
within that institution—faculty members—from the Board's jurisdiction.   The facts and
reasoning of *Catholic Bishop* itself are limited to faculty teaching within the premises of
the religious educational institution.   *Catholic Bishop* described its decision as involving
"teachers in church-operated schools[.]"   440 U.S. at 507.   The certification and order

---

[4]  The dissenting opinion (at 6) posits that the ministerial exception governs here.   Loma
Linda Health has made no such argument here, and for all of the same reasons already
given, there is no clear or mandatory precedent qualifying as ministers medical residents
and fellows who need not have any religious affiliation and who are working outside of
Loma Linda Health and only occasionally teaching medicine to co-employees.

**No. 23-5096**                                    **September Term, 2022**

at issue there encompassed "all full-time and regular part-time lay teachers," but it excluded, among other employees, "procurators, dean of studies, business manager, director of student activities, director of formation, director of counseling services, office clerical employees, maintenance employees, cafeteria workers, watchmen, librarians, nurses, * * * and all guards and supervisors[.]"   *Id.* at 493 n.5 (quoting *Catholic Bishop of Chicago*, 220 NLRB 359, 360 (1975)).   In its analysis, *Catholic Bishop* placed great stock in the teachers' central role within the parochial school, and highlighted "the critical and unique role of the teacher in fulfilling the mission of a church-operated school."   *Id.* at 501; *see, e.g.*, *id.* (describing "[t]he key role played by teachers in such a school system" and "the importance of a teacher's function in a church school"); *id.* at 504 (stressing "[t]he church-teacher relationship in a church-operated school").

      Neither does our circuit precedent extend beyond employees whom we have determined to be faculty members who teach within the religious educational institution itself.   In *Great Falls*, we held that the Board lacked jurisdiction over the University's faculty and did not reach any other question.   *See* 278 F.3d at 1337.   Similarly, in *Carroll College*, we determined that the college was not required to bargain with its faculty's union because of the school's religious character.   *See* 558 F.3d at 570.   In *Duquesne University*, we explained that "[t]his case begins and ends with our decisions in *Great Falls* and *Carroll College*" because the case "involves *faculty members* and Duquesne satisfies the *Great Falls* test."   947 F.3d at 832 (emphasis added); *see id.* (determining "[a]s an initial matter" that "the adjuncts here are clearly faculty members"); *id.* at 836–837 (analyzing whether the employees at issue, adjunct professors, were more like faculty or non-faculty employees).   We emphasized that "the adjuncts possess[ed] the key attribute of faculty members" because "[t]hey educate students" within the religious institution and, "according to the faculty handbook, their *only* responsibility [was] teaching."   *Id.* at 832.   We explicitly left unresolved "the extent of the Board's jurisdiction under the [Act] in cases involving religious schools and their non-faculty employees[.]"   *Id.* at 837.

      None of the cases applying *Catholic Bishop* involved non-professional teaching by employees who only engaged in offering instruction for a small percentage of time, 100% of which would occur *outside* the religious educational institution (Loma Linda Health), and a significant percentage of which appears to take place within secular or non-denominationally affiliated institutions.   There simply is neither First Amendment nor statutory case law addressing employees who do a small amount of teaching, not within the religious educational institution that pays their salary and administers their benefits, but instead in the mixture of secular and religious healthcare institutions where these medical residents and fellows perform their work.   That could prove relevant to the merits of the *Catholic Bishop* statutory analysis because Congress's intent that the National Labor Relations Act apply to workers in healthcare institutions is clear on the

**No. 23-5096**                                    **September Term, 2022**

face of the statute, *see* 29 U.S.C. § 152(14), which contrasts with its silence as to religious educational institutions, *see Catholic Bishop*, 440 U.S. at 504–506.

To be clear, nothing we say here is meant to answer that First Amendment question.   We say only that the absence of any governing case law either before or after *Smith* means that the first prong of the *Leedom* jurisdiction test has not been met.

**2**

As for *Leedom*'s second prong, Loma Linda Health has not shown that it cannot vindicate its asserted constitutional right by pursuing review in this court of the Board's final decision.

Loma Linda Health argues that the Regional Director's conduct of a hearing into whether it falls within *Catholic Bishop*'s jurisdictional bar violated its First Amendment rights.   *See* Loma Linda Health Mot. at 8.   But that hearing concluded over a month ago.   So even assuming for purposes of argument that the hearing ran afoul of *Catholic Bishop*, there is nothing left for this court to enjoin in that regard.

Looking forward, Loma Linda Health has not said how the Board's mere conduct of an election would violate its First Amendment right or would even require any material action on its part.   It would not implicate any of Loma Linda Health's religious objections to engaging in collective bargaining, *see* Dissenting Op. at 8–9.   It is the Board that will conduct the election, not Loma Linda Health.   *See* 29 U.S.C. § 153(b); NATIONAL LABOR RELATIONS BOARD, CASEHANDLING MANUAL, PART TWO, REPRESENTATION PROCEEDINGS §§ 11300–11350 (2020) (setting out the Board's procedures for conducting an election).   The Regional Director did require Loma Linda Health to provide a list of employees and relevant contact information by May 18th.   Reg. Dir. Decision at 30.   But the Director stressed that Loma Linda Health could request a stay from the Board if that action trenched upon its exercise of religion.   It does not appear that Loma Linda has sought any stay from the Board of that aspect of the Regional Director's ruling, nor did it file an updated request for such relief from this court.   The dissenting opinion suggests that the Board's authority to select election observers, which could be drawn from employees, impinged on Loma Linda Health's free exercise. Dissenting Op. at 8.   But Loma Linda Health has made no such argument, presumably because its exercise of religion does not include requiring that its employees share its religious beliefs or, in particular, its opposition to collective bargaining, *see* Excerpt from Hearing Transcript at 6, *Loma Linda Health*, No. 23-0688 (D.D.C. March 21, 2013), Dkt. 6-17.

No. 23-5096                                    September Term, 2022

And even were the Union to win the election, Loma Linda Health need not engage in any collective bargaining, but could freely practice its religion by simply refusing to bargain with the Union.   That would presumably lead to a Board order finding an unfair labor practice and, in that way, open the door to judicial review of its First Amendment claim.   And Loma Linda Health has not argued that anything about the Board's conduct of an election would entail the type of theological probing against which *Great Falls* protects as a statutory matter, *see* 278 F.3d at 1341.   The dissenting opinion worries (at 8) that Loma Linda Health "*may* be put to the choice of complying with [its] religious tenets" or Regional Director orders (emphasis added).   Not so.   Regional Director and Board decisions are not self-executing; enforcement must be obtained from a court.   *See* 28 U.S.C. § 160(e).   That would not happen before Loma Linda Health's First Amendment objections are fully heard and resolved.

Loma Linda Health relies on *Axon Enterprise, Inc. v. Federal Trade Commission*, 143 S. Ct. 890 (2023), for the proposition that any challenge to the constitutionality of the Board's jurisdiction cannot be meaningfully reviewed on appeal.   But *Axon* said nothing so broad.   Rather, *Axon* recognized a narrow exception to Congress's prescribed path for judicial review of agency action for facial challenges to the constitutional structure of administrative agencies' ability to operate.   *Id.* at 897 (holding that "district courts have jurisdiction to hear" and "resolve the parties' constitutional challenges to the Commissions' structure").   Such "extraordinary claims" are "fundamental, even existential":   They "charge that an agency is wielding authority unconstitutionally in all or a broad swath of its work."   *Id.* at 897, 902.

That is not what Loma Linda Health is arguing.   Instead, it levels only an as-applied challenge to the Board's *statutory* jurisdiction in this particular case and on this administrative record.   Nothing in *Axon* holds that every "nonfrivolous" constitutional objection to every agency proceeding (Dissenting Op. at 2), especially fact-bound as-applied claims to a particular exercise of agency jurisdiction, can bypass the congressional scheme established for judicial review.   Loma Linda Health, after all, does not argue that the Regional Director or Board lacked the legal authority to apply *Catholic Bishop* and *Great Falls* and rule in its favor, declining jurisdiction.   It does not challenge "the structure or [the] very existence" of the Board.   *Axon*, 143 S. Ct. at 902.   In that way, Loma Linda Health's constitutional claim stands in sharp contrast to that of the petitioner in *Axon*, which "would have the same claim had it *won* before the agency * * * about subjection to an illegitimate proceeding, led by an illegitimate decisionmaker." *Id.* at 903.

In addition, given the necessity of some factual findings to determine whether *Catholic Bishop* even applies in this unusual setting and whether our *Great Falls* test has been met, Loma Linda Health's challenge to the Regional Director's jurisdictional

**No. 23-5096**                                    **September Term, 2022**

judgment is not "wholly collateral" to the review process prescribed by Congress, unlike the purely structural objection brought in *Axon*.   143 S. Ct. at 904.

In other words, Loma Linda Health seeks not to apply *Axon*, but to amplify its jurisdictional reach to include every record-bound constitutional objection to agency action.   Nothing in *Axon* demonstrates a substantial likelihood of success on that argument.

B

As for the remaining injunction factors, Loma Linda Health has not shown that it is currently facing irreparable harm.   Any harms Loma Linda Health might have endured from the hearing process are over and done with.   No injunctive relief could redress them.   And no prospect of a future hearing that could implicate *Catholic Bishop*'s concerns has been identified.   Even if Loma Linda Health declines to seek further review from the Board, it has not argued to this court how the Board's running of an election would involve an unconstitutional inquiry into its religious character or practices, or otherwise impinge on its First Amendment rights.   Loma Linda Health also may not sustain any future harm at all if the Union loses the election.   Nor has Loma Linda Health explained how proceeding through the ordinary appellate procedure of review of the Board's decision—which would simply involve it refusing to bargain with the Union—would irreparably harm its asserted First Amendment right not to collectively bargain.

The final two factors—which merge when the Government is the party opposing emergency relief, *see Nken*, 556 U.S. at 435—do not show that Loma Linda Health is entitled to an injunction pending appeal, either.   Loma Linda Health has not yet shown that granting an injunction would be in the public interest given the competing public interest in allowing employees to exercise their own First Amendment rights to associate—or not—with each other and the Union.   *See Lyng v. United Automobile Workers*, 485 U.S. 360, 366 (1988).   Even more to the point, Loma Linda Health has failed to demonstrate at this stage "a likelihood of violation of its constitutional rights," and in the context of a claimed constitutional injury, its "showing on public interest rises and falls with the strength of its showing on likelihood of success on the merits." *Archdiocese of Wash. v. Washington Metro. Area Transit Auth.*, 897 F.3d 314, 335 (D.C. Cir. 2018).

* * * * *

For all of those reasons, Loma Linda Health has not shown that it is entitled to an injunction pending appeal at this time.   We also deny the motion to expedite the appeal

Page 16

**No. 23-5096**                                          **September Term, 2022**

because Loma Linda Health has not shown that the established appellate process will cause "irreparable injury" or that the district court's dismissal for lack of subject matter jurisdiction "is subject to substantial challenge."   *See* D.C. CIRCUIT HANDBOOK OF PRACTICE AND INTERNAL PROCEDURES 34 (2021).

     The Clerk is directed to enter a briefing schedule.

<u>**Per Curiam**</u>

                                    **FOR THE COURT:**
                                    Mark J. Langer, Clerk

                    BY:    /s/

                                    Lynda M. Flippin
                                    Deputy Clerk

R AO, *Circuit Judge*, dissenting from the denial of an injunction pending appeal: Recognizing the importance of religious liberty protected by the First Amendment, the Supreme Court and this circuit have repeatedly held that the National Labor Relations Board ("NLRB" or "Board") may not exercise jurisdiction over teachers at religious educational institutions. Nonetheless, in disregard of clear circuit law, the Board asserted jurisdiction over the Loma Linda University Health Education Consortium ("Consortium"), which is part of the Seventh-day Adventist Church. The Board is moving ahead with union representation proceedings for the Consortium's medical residents and fellows who teach as an integral part of their employment.

The Consortium filed suit in district court, alleging the NLRB's exercise of jurisdiction violates the Religion Clauses of the First Amendment. The district court dismissed the case for lack of jurisdiction, and the Consortium now seeks an injunction pending appeal. The only question on appeal is whether the Consortium may properly bring its suit in district court in the first instance. Under Supreme Court precedent and the text of the National Labor Relations Act, it can. As the Supreme Court recently confirmed in *Axon Enterprise, Inc. v. Federal Trade Commission*, 143 S. Ct. 890 (2023), challenges to the constitutionality of agency proceedings may be brought in district court, and nothing in the National Labor Relations Act suggests otherwise. The Consortium is therefore likely to succeed in showing that jurisdiction was appropriate in the district court. Since the Consortium will face irreparable harm absent injunctive relief, and since the equities favor such relief here, I would grant the injunction pending appeal.

I.

The Consortium is a non-profit religious corporation that is part of the Seventh-day Adventist Church. It "operates approximately 70 residency programs for the purpose of educating approximately 800 fellows and residents regarding how to minister to patients in a manner that is consistent with Church teachings." Residents and fellows at the Consortium are encouraged to "educate junior fellows and residents and medical students on Church doctrine and participate in prayer sessions with patients." The Consortium does not provide care to patients and is not authorized to practice medicine. The Seventh-day Adventist Church has a "long-standing teaching" that church institutions must "remain free and independent" from "labor unions or similar organizations" that "might violate a member's conscience or interfere with the fulfillment of the mission of the Church."

The Union of American Physicians & Dentists petitioned the regional NLRB office to represent the Consortium's residents and fellows. After the Board refused to determine whether it had jurisdiction at the outset of the proceedings, the Consortium filed suit in the District Court for the District of Columbia, seeking a declaration that the Consortium is exempt from the Board's jurisdiction and an injunction requiring the Board to dismiss the representation proceedings. The district court sua sponte dismissed the complaint for lack of subject matter jurisdiction, concluding the Consortium could seek

**No. 23-5096**                                    **September Term, 2022**

appellate review following an order by the NLRB in a subsequent unfair labor practice action. The Consortium appealed that decision and seeks an injunction pending appeal. Since the filing of this appeal, the Regional Director has issued an opinion confirming the jurisdiction of the Board and directing the Consortium to hold a union representation election.

II.

The Consortium maintains the NLRB's exercise of jurisdiction encroaches on the rights protected by the Religion Clauses of the First Amendment. Therefore, the Consortium contends, it must be able to challenge the NLRB's jurisdiction in district court without first going through an intrusive union representation process, incurring an unfair labor practice charge, and awaiting a final order of the Board. The only question on appeal is whether the district court has jurisdiction to consider the Consortium's constitutional challenge, not whether that challenge will ultimately succeed. And the question before this panel is whether the Consortium is entitled to an injunction pending that appeal.

The Consortium is entitled to injunctive relief if it demonstrates: (1) a substantial likelihood of success on the merits; (2) irreparable injury absent an injunction; (3) no substantial injury to other interested parties from an injunction; and (4) the public interest favors an injunction. *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 746 (D.C. Cir. 1995). The third and fourth factors merge when the government is the opposing party. *Karem v. Trump*, 960 F.3d 656, 668 (D.C. Cir. 2020). The "most important factor" is likelihood of success on the merits. *Aamer v. Obama*, 742 F.3d 1023, 1038 (D.C. Cir. 2014). Because the Consortium is very likely to succeed in demonstrating the district court has jurisdiction and because it continues to suffer irreparable harm from ongoing unionization proceedings, I would grant the injunction pending appeal.

A.

The district court has jurisdiction over the Consortium's nonfrivolous constitutional challenge to the Board's jurisdiction. This conclusion follows from a straightforward reading of the National Labor Relations Act as well as Supreme Court and circuit precedent.

Section 10(f) of the Act confers jurisdiction on the federal courts of appeals to review "final order[s] of the Board" relating to alleged unfair labor practices. Pub. L. No. 74-198, 49 Stat. 449, 455 (1935) (codified as amended at 29 U.S.C. § 160(f)). Orders made in representation proceedings are not such "final orders" and hence may not generally be reviewed in the courts of appeals. *See Am. Fed'n of Labor v. NLRB*, 308

Page 2

No. 23-5096                                    September Term, 2022

U.S. 401, 409 (1940). But suits challenging the constitutionality of Board proceedings are not challenges to final orders of the Board. Section 10(f) is entirely silent as to how or where such suits may be brought, thus leaving in place the general grant of federal question jurisdiction to the district courts. *See* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").

In *Leedom v. Kyne*, the Supreme Court recognized that in some cases district courts may review allegations that the NLRB exceeded its statutory authority. 358 U.S. 184, 188 (1958). *Leedom* permitted district court jurisdiction over suits that seek to "strike down an order of the Board made in excess of its delegated powers and contrary to a specific prohibition in the Act." *Id.* By definition, such suits do not seek review of "a decision of the Board made within its jurisdiction." *Id.* While *Leedom* approved district court jurisdiction for claims that the Board exceeded its statutory authority, its logic applies perforce to claims that the Board has exceeded constitutional limits.

The Consortium here maintains the Board's exercise of jurisdiction violates the First Amendment. Such a suit does not concern a final order made by the Board under its jurisdiction; rather, it is a challenge to the legitimacy of the Board proceedings altogether. The understanding both before and after *Leedom* was that such constitutional claims against the Board's jurisdiction could always be brought in district court. Judge Learned Hand stated that an "assertion of constitutional right" if "not transparently frivolous" would confer jurisdiction on the district court. *Fay v. Douds*, 172 F.2d 720, 723 (2d Cir. 1949). And this court stated:

> The general rule that Board orders are judicially reviewable only under Section 10 of the Act is subject to two major exceptions: (1) If Board action results in denial of a constitutional right, *Fay v. Douds* …, or (2) if the Board acts 'in excess of its delegated powers and contrary to a specific prohibition in the Act,' (*Leedom v. Kyne* …), then a federal court has jurisdiction.

*Miami Newspaper Printing Pressmen's Union Loc. 46 v. McCulloch*, 322 F.2d 993, 996 (D.C. Cir. 1963).

The availability of district court jurisdiction here is further compelled by the Supreme Court's recent decision in *Axon Enterprise, Inc. v. Federal Trade Commission*. In *Axon*, the Court unanimously held that constitutional challenges pertaining to an agency's structure may proceed in district court in the first instance. 143 S. Ct. at 900. In coming to this conclusion, the Court applied the three-factor *Thunder Basin* test that is used to resolve whether claims may proceed in district court notwithstanding an administrative review scheme. That test asks whether precluding district court

**No. 23-5096**                                    **September Term, 2022**

jurisdiction would "foreclose all meaningful judicial review" of the claim at issue; whether the claim is "wholly collateral to the statute's review provisions"; and whether the claim is "outside the agency's expertise." *Id.* (cleaned up).

The Court in *Axon* confirmed all three factors are met for claims challenging the constitutional legitimacy of agency proceedings. First, there is no meaningful judicial review of constitutional claims on an ultimate appeal because there is no way to vindicate the harm of being subjected to illegitimate proceedings after the fact. A plaintiff's claim of "being subjected to unconstitutional agency authority" constitutes a "here-and-now injury," one that is "impossible to remedy once the proceeding is over." *Id.* at 903 (cleaned up). After all, "[a] proceeding that has already happened cannot be undone." *Id.* at 904. Second, such claims are wholly collateral to the review provisions of the statute because they go to the agency's "power to proceed at all, rather than actions taken in the agency proceedings." *Id.* Third, agencies have no expertise in interpreting the Constitution. *Id.* at 905–06.

I would apply the analysis in *Axon* to determine whether the district court has jurisdiction. The Consortium maintains the NLRB's assertion of jurisdiction violates the First Amendment, a here-and-now constitutional injury that cannot be remedied through appellate review of an ultimate order by the Board. As the Court has recognized, "the very process of inquiry" by the Board may implicate the religious liberty guaranteed by the First Amendment. *NLRB v. Catholic Bishop of Chicago*, 440 U.S. 490, 502 (1979). Moreover, the constitutional claims are wholly collateral to the appellate review provided in section 10(f) because the Consortium objects to the Board's "power generally" and to being "subject[ed] to an illegitimate proceeding." *Axon*, 143 S. Ct. at 904. Finally, the NLRB lacks any policy expertise relating to the First Amendment. After *Axon*, it is more than likely the district court has jurisdiction over the Consortium's claims.[1]

B.

The Board maintains the Consortium cannot establish district court jurisdiction under a two-prong test devised by this court. To establish such jurisdiction over a challenge to the Board's authority, a plaintiff must first demonstrate the Board "acted in excess of its delegated powers and contrary to a specific prohibition which is clear and mandatory." *Nat'l Air Traffic Controllers Ass'n AFL-CIO v. Fed'l Serv. Impasses Panel*, 437 F.3d 1256, 1263 (D.C. Cir. 2006) (cleaned up). We have said the plaintiff must

---

[1] The majority suggests *Axon* does not govern the as-applied challenge here. *See* Order at 15. But nothing in *Axon* draws a distinction between facial and as-applied constitutional challenges to being "subject[ed] to an illegitimate proceeding." *Axon*, 143 S. Ct. at 904.

**No. 23-5096**                                           **September Term, 2022**

make a "strong and clear" showing of a violation. *McCulloch v. Libbey-Owens-Ford Glass Co.*, 403 F.2d 916, 917 (D.C. Cir. 1968). Second, the plaintiff must show that "barring review by the district court would wholly deprive [it] of a meaningful and adequate means of vindicating its … rights." *Air Traffic Controllers*, 437 F.3d at 1263 (cleaned up).

At the outset, *Axon* abrogates *Air Traffic Controllers* to the extent that decision governs district court jurisdiction over *constitutional* challenges to the Board's authority. *Axon* did not suggest a constitutional challenge to agency authority could first be brought in district court only if the merits were extremely clear or if the plaintiff would otherwise be totally foreclosed from relief. Those standards have been applied to claims that the Board exceeded its *statutory* authority after *Leedom*. To the extent this circuit has applied such requirements to constitutional claims, it has done so without explanation or statutory justification.[2] *See Libbey-Owens-Ford Glass Co.*, 403 F.2d at 917 (applying the "strong and clear" requirement to both constitutional and statutory claims without citation or explanation as to why the test applies to constitutional claims). In light of *Axon*, there is no longer a basis for applying the "strong and clear" standard to determine whether a constitutional challenge to agency authority may be brought in district court.

But even if the *Air Traffic Controllers* test were to apply to constitutional challenges to the Board's jurisdiction, the Consortium has easily demonstrated its likelihood of success under that standard. First, the Consortium has made a "strong and clear" showing the NLRB acted in excess of its delegated powers by asserting jurisdiction here. Almost fifty years ago, the Supreme Court held the National Labor Relations Act does not confer jurisdiction over "teachers in church-operated schools," because such jurisdiction "would implicate the guarantees of the Religion Clauses." *Catholic Bishop*, 440 U.S. at 507. Interpreting the Act to avoid government "entanglement with the religious mission of the school," the Court held that Board jurisdiction over such teachers "presents a significant risk that the First Amendment will be infringed." *Id.* at 502. *Catholic Bishop* excepted an entire category of employees from the National Labor Relations Act not because the statutory text compelled that conclusion but because to do otherwise would raise serious constitutional problems.

---

[2] Nearly all of our cases apply the *Leedom* test with respect to statutory challenges. In fact we can find only one case in our circuit applying a "strong and clear" requirement to a constitutional challenge against the Board, and that challenge went not to the Board's jurisdiction but simply to the Board's conduct in the course of representation proceedings. *See United Food & Commercial Workers, Loc. 400 v. NLRB*, 694 F.2d 276, 279 (D.C. Cir. 1982) (per curiam).

**No. 23-5096**                                        **September Term, 2022**

Although *Catholic Bishop*'s holding concerns the scope of the National Labor Relations Act, that holding was compelled by the Constitution.

Following *Catholic Bishop*, we have repeatedly held that the Board may not second-guess the mission and principles of religious institutions. The NLRB does not dispute the Consortium satisfies our "bright-line" test for whether an institution is religious. *Univ. of Great Falls v. NLRB*, 278 F.3d 1335, 1345 (D.C. Cir. 2002). Nor could it because the Consortium holds itself out to the public as a Seventh-day Adventist institution; it is non-profit; and it is in fact affiliated with the Seventh-day Adventist Church. *See id.* at 1344–45. Moreover, as we recently explained, "[o]nce we determine that [the employees] are faculty members or teachers *of any sort*, the *Great Falls* test applies, and that test does not permit us to examine the roles played by the faculty members." *Duquesne Univ. of the Holy Spirit v. NLRB*, 947 F.3d 824, 833 (D.C. Cir. 2020) (emphasis added). Adhering to *Catholic Bishop*, we have maintained that the Board may not examine the roles played by teachers at religious institutions because to do so would inevitably entangle the Board in the religious affairs of the institution. *Id.* at 834.

None of our cases understood the constitutional concerns identified in *Catholic Bishop* to be attenuated or abrogated by the Supreme Court's subsequent decision in *Employment Division v. Smith*, 494 U.S. 872 (1990). To the contrary, we have relied on *Smith*'s understanding that "judging the centrality of different religious practices is akin to the unacceptable business of evaluating the relative merits of differing religious claims." *Great Falls*, 278 F.3d at 1343 (quoting *Smith*, 494 U.S. at 887). While the majority suggests *Catholic Bishop* was curtailed by *Smith*, *see* Order at 9, the Supreme Court's recent ministerial exception decisions expressly hold that the Free Exercise Clause protects religious institutions from laws "governing the employment relationship" between the institution and "certain key employees," including religious teachers. *Our Lady of Guadalupe School v. Morrissey-Berru*, 140 S. Ct. 2049, 2055 (2020); *see also Hosanna-Tabor Evangelical Lutheran Church & School v. EEOC*, 565 U.S. 171, 188 (2012). As these cases demonstrate, the First Amendment protections at the root of *Catholic Bishop* are as vital today as they ever have been.

Here, as the Regional Director found, the Consortium is a religious educational institution, not a medical institution. The Consortium does not provide medical care: it is not authorized to practice medicine; it does not bill public or private insurance for the time that residents and fellows spend being educated by attending physicians; and it does not own medical equipment or facilities. Rather, the Consortium is accredited as an educational institution by the Accreditation Council for Graduate Medical Education and it "exists for the sole purpose of facilitating the education of residents and fellows."

No. 23-5096                                    September Term, 2022

The record also demonstrates the residents and fellows seeking to unionize are a kind of teacher at a religious educational institution, and therefore the Board may not assert jurisdiction over them. The Consortium and the Union have stipulated that "all [Consortium] residency and fellowship programs require residents and fellows to engage in teaching of medical students, other residents, and other medical professionals." According to a declaration by the Consortium's president, it is "integral" to the duties of these residents and fellows that they "teach and assist in teaching and training" in order to "transmit not only medical knowledge, but also to incorporate, represent and transmit the values and mission of [the Consortium]." Permitting the NLRB to inquire further into the specific roles played by these teaching employees would result in impermissible government intrusion into religious affairs. *See Catholic Bishop*, 440 U.S. at 502. In light of the stipulation and facts here, I find unavailing the Board's argument that the Consortium's residents and fellows do not qualify as teachers for the purpose of *Catholic Bishop*.[3]

These facts lead to a straightforward result under our cases. The Consortium is a religious educational institution employing medical residents and fellows as teachers, and there is no dispute the Consortium satisfies the *Great Falls* bright-line test. The NLRB therefore lacks jurisdiction over "teachers … of any sort" at the Consortium, and we are not permitted to "examine the roles played" by such teachers to determine whether they are sufficiently central to the religious mission of the institution.[4] *Duquesne*, 947 F.3d at 833. The Consortium has made a strong and clear showing that the Board acted in excess of its delegated powers and contrary to a clear prohibition on asserting jurisdiction over teachers at religious institutions.

Second, unless there is review in the district court the Consortium will have no "meaningful and adequate means of vindicating its … rights." *Air Traffic Controllers*, 437 F.3d at 1263. *Catholic Bishop* made clear the mere fact of NLRB proceedings involving

---

[3] The majority suggests the Consortium cannot have a viable claim until the NLRB squarely resolves the jurisdictional question. *See* Order at 9–11. But at the time the Consortium filed suit, the Board had already declined to bifurcate proceedings and resolve jurisdiction at the outset, thereby allowing the representation proceedings to go forward. We have emphasized the Board must dismiss cases where it clearly lacks jurisdiction. *See Carroll College, Inc. v. NLRB*, 558 F.3d 568, 574 (D.C. Cir. 2009) ("From the Board's own review of Carroll's publicly available documents, it should have known immediately that the College was entitled to a *Catholic Bishop* exemption …. The Board thus had no jurisdiction to order the school to bargain with the union.").

[4] To the extent Board precedent requires inquiry into the specific roles played by teachers, *see Saint Xavier Univ.*, 365 N.L.R.B. No. 54 (2017), those decisions are inconsistent with our precedent (and, in any event, not binding on this court).

**No. 23-5096**                                    **September Term, 2022**

teachers at religious institutions implicates First Amendment freedoms. As the Court explained, "[i]t is not only the conclusions that may be reached by the Board which may impinge on rights guaranteed by the Religion Clauses, but also the *very process of inquiry* leading to findings and conclusions." 440 U.S. at 502 (emphasis added); *cf. Our Lady of Guadalupe*, 140 S. Ct. at 2060 (explaining the First Amendment protects the "autonomy" of religious institutions "with respect to internal management decisions that are essential to the institution's central mission"). The harm caused by the NLRB "trolling through the beliefs" of the Consortium and "making determinations about its religious mission," *see Great Falls*, 278 F.3d at 1342, cannot be undone through a later appeal.

The harms here are far from hypothetical. In its representation order, for instance, the Regional Director recognized the Consortium as a religious institution, but concluded the "actual duties" of the residents and fellows employed by the Consortium do not play any "specific role in fulfilling [its] religious mission." Such granular scrutiny of the duties of teachers at religious institutions is precisely what is prohibited by our cases. Furthermore, since the filing of this appeal, the Regional Director has issued an order directing an election. That order requires the Consortium to participate in the forthcoming election proceedings despite its religious objections to collective bargaining. And the Consortium has been ordered to post notices of the election in "conspicuous places," to assemble and share a list of eligible voters, and to permit the Union of American Physicians and Dentists to employ election observers.

As the representation election proceeds, the Consortium may be put to the choice of complying with the religious tenets of the Seventh-day Adventist Church or complying with the Regional Director's orders. And any further proceedings before the Board will likely necessitate inquiry into the religious and educational mission of the Consortium, the role played by the Consortium's fellows and residents, and perhaps the sincerity of the Consortium's religious objections to collective bargaining and labor union representation. Subjecting the Consortium to such NLRB scrutiny cannot be squared with the First Amendment.

* * *

In sum, the Consortium has established that it is more than likely to succeed in establishing the district court has jurisdiction over the constitutional challenges to the Board's authority.

III.

The Consortium has also satisfied the other factors necessary for an injunction pending appeal. It has established irreparable harm because, as explained above, the

Page 8

No. 23-5096                                          September Term, 2022

Consortium experiences an ongoing injury by being subjected to ultra vires proceedings before the NLRB, and this is an injury that cannot be redressed after the fact. The Board maintains that judicial review will be available to the Consortium after the representation election and the adjudication by the Board of any unfair labor practices. But this simply highlights how the very process of Board jurisdiction interferes with the Consortium's religious educational mission and infringes on its religious objections to collective bargaining. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Pursuing America's Greatness v. FEC*, 831 F.3d 500, 511 (D.C. Cir. 2016) (cleaned up).

Similarly, the balance of the equities favors a stay pending appeal. The government has no valid interest in maintaining representation proceedings in a case over which the NLRB lacks jurisdiction, particularly when the limits of the Board's jurisdiction implicate the Constitution. *See League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016) ("There is generally no public interest in the perpetuation of unlawful agency action."); *Christian Legal Soc'y v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006) ("[I]njunctions protecting First Amendment freedoms are always in the public interest."). The Consortium has demonstrated it is entitled to injunctive relief.

* * *

In asserting jurisdiction over the Consortium, which is stipulated to be a religious educational institution employing residents and fellows as teachers, the Board disregards the First Amendment and flouts this circuit's precedents. It is apparently unmoved by our previous admonishments to adhere to *Catholic Bishop* and the bright-line test in *Great Falls*, which recognize the constitutional harm of subjecting religious institutions to the Board's jurisdiction. *See Carroll College, Inc. v. NLRB*, 558 F.3d 568, 574 (D.C. Cir. 2009). We recently and explicitly rejected the Board's *Pacific Lutheran* test, which "runs afoul of our precedent by claiming jurisdiction in cases that we have placed beyond the Board's reach." *Duquesne Univ.*, 947 F.3d at 833. Undeterred, in another pending proceeding, the Board's general counsel has brazenly pressed the Board to reject this court's *Duquesne* standard and "return to the *Pacific Lutheran* standard." *See* General Counsel's Brief, *Saint Leo Univ. Inc.*, 12-CA-275612, at 58–59 (Apr. 14, 2023).

Precisely because the NLRB refuses to respect the limits of its jurisdiction, religious institutions must be permitted to vindicate their First Amendment rights in district court without waiting for the conclusion of intrusive Board proceedings. Since the Consortium is likely to succeed in showing the district court has jurisdiction, and since the remaining factors favor a stay, I would grant an injunction pending appeal.